IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MATTHEW LUSANE, | Case No. 5:18-cv-0632 |
| Petitioner, | JUDGE PAMELA A. BARKER |
| v. | MAGISTRATE JUDGE THOMAS M. PARKER |
| CHARMAINE BRACY, Warden, | |
| Respondent. | **REPORT & RECOMMENDATION** |

## I.    Introduction

On March 19, 2018, petitioner, Matthew Lusane, Ohio prisoner A660925[1], filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions and sentences in *State v. Lusane,* Case No. 2013CR0443.[2]  ECF Doc. 1, ECF Doc. 7-1 at 8.  Respondent Warden, Charmaine Bracy, filed an answer/return of writ (ECF Doc. 7) and two supplemental returns of writ.  ECF Doc. 8 and ECF Doc. 11.  Lusane filed a reply/traverse.  ECF Doc. 34.  On January 20, 2020, Lusane filed a notice of supplement to the record (ECF Doc. 58) and on February 4, 2020, he filed a memorandum in support of his notice of supplements.  ECF Doc. 59.

---

[1] https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A660925 (last visited 2/20/20).
[2]  The matter is before the undersigned by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Lusane's petition or other case-dispositive motions.

Because Lusane's claims are all procedurally defaulted, noncognizable and/or lacking in merit, I recommend that his claims be DISMISSED and his petition for writ of habeas corpus be DENIED.

## II.     Relevant Procedural History

### A.     State Conviction

On July 18, 2013, Lusane was indicted for two counts of OVI in violation of Ohio Rev. Code §§ 4511.19(A)(1)(a) and (h), Ohio Rev. Code § 4511.19(G)(1)(d), Ohio Rev. Code § 2929.13(G)(2) with repeat offender specifications, Ohio Rev. Code § 2941.1413; and one count of driving under suspension in violation of Ohio Rev. Code. § 4510.11(A).  ECF Doc. 7-1 at 8.

Most of Lusane's arguments, both in state court and now in his habeas petition, relate to the repeat offender specifications.  Because the state alleged Lusane had five or more prior OVI convictions, the state enhanced his charge to a felony with the possibility of a longer sentence under Ohio Rev. Code § 2941.1413.  Lusane filed several pretrial motions, including a motion to dismiss, which challenged the underlying OVI convictions.  ECF Doc. 7-1 at 31.  The court held a hearing on Lusane's motion to dismiss on April 1, 2014.  A state highway patrol trooper testified at the hearing and the state produced a certified copy of Lusane's driving record, which was admitted into evidence.  The driving record showed twenty-four open driving suspensions and six prior OVI convictions: July 6, 1995, May 12, 2000, July 7, 2005, December 6, 2005, December 27, 2005 and August 2012.  ECF Doc. 7-1 at 59.  The trial court concluded Lusane had six prior OVI convictions and denied his motion to dismiss.  ECF Doc. 7-1 at 61.

A jury trial commenced on August 7, 2014.  ECF Doc. 7-1 at 245.  The jury found Lusane guilty on all counts in the indictment including the repeat OVI offender specifications. ECF Doc. 7-1 at 245-247.  On September 3, 2014, the trial court merged the two OVI

convictions and specifications and sentenced Lusane to serve a two year prison term for the OVI conviction, to be served concurrently with a four year mandatory prison term for the specification and 180 days in jail for driving under suspension.  His aggregate prison sentence was six years.  ECF Doc. 7-1 at 253.

### B.     Direct Appeal

On September 26, 2014, Lusane, represented by new counsel, filed a notice of appeal to the Ohio Court of Appeals.  Lusane asserted two assignments of error:

**First Assignment of Error:**

The trial court erred in denying appellant's motion to dismiss the felony indictment (T.D. 97) where appellant established a prima facie case that one of the cases used to enhance his current charge to a felony was constitutionally infirm as the trial court in that case failed to hold a plea hearing where appellant waived his trial rights and entered a guilty plea.

**Second Assignment of Error:**

The trial court erred when it enhanced appellant's, Matthew Lusane's, sentence pursuant to Ohio Revised Code 4511.19(G)(1)(d)(i) (T.D. 170) because R.C. 4511.19 contains two different penalties for persons who have committed six offenses within 20 years, with no difference in proof required to trigger the greater penalties, R.C. 4511.19 violates due process and equal protection.

ECF Doc. 7-1 at 266.  On January 25, 2016, the Ohio Court of Appeals overruled Lusane's assignments of error and affirmed his conviction and sentence.  ECF Doc. 7-1 at 308-317; *State v. Lusane,* 11th Dist. Portage No. 2014-P-0057, 2016-Ohio-267.

On February 5, 2016, Lusane moved to certify a conflict on the constitutionality of the repeat OVI offender specification.  ECF Doc. 7-1 at 319.  On March 11, 2016, the court of appeals certified the following question of law:

Whether the repeat OVI offender specification in R.C. 2941.1413(A) facially violates a defendant's right to equal protection, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Ohio

Constitution, because the specification is based upon the identical evidence required to prove a fourth-degree felony under R.C. 4511.19(G)(1)(d)?

ECF Doc. 7-1 at 321-323.

On March 10, 2016, Lusane, through counsel, filed a notice of appeal with the Ohio

Supreme Court.  ECF Doc. 7-1 at 326.  In his memorandum in support of jurisdiction, he raised

the following propositions of law:

> The repeat OVI offender specification in R.C. 2941.1413(A) facially violates a defendant's  right to equal protection, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution, because the specification is based solely upon the same information required to establish a fourth-degree felony under R.C. 4511.19(G)(1)(d).

> The use of a prior OVI conviction to enhance a subsequent OVI charge where the defendant was never brought before a judge for a plea hearing before the prior conviction was entered in the previous case violates a defendant's right to Due Process, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

ECF Doc. 7-1 at 330.  On June 15, 2015, the Ohio Supreme Court declined to accept jurisdiction.

ECF Doc. 7-1 at 349.

### C.      Post-Conviction Petition

On June 8, 2015, Lusane filed a *pro se* petition to vacate or set aside the judgment of

conviction or sentence.  ECF Doc. 7-1 at 350.  In his petition for post-conviction relief, Lusane

raised the following claims:

> I.     In raising the degree of the OVI charge to a felony was unconstitutional where the State relied upon the Kent OVI case no. 2005-TRC-4525, that was the result of a no contest plea which is prohibited by Evidence Rule 410(A)(2) and Criminal Rule 11(B)(2).  The petitioner's guaranteed rights to Due Process and Equal Protection of Law under the U.S. Constitution and the Bill of Rights were violated.  ECF Doc. 7-1 at 354.

> II.    The government failed to disclose the recorded emergency call that was specifically requested and ordered; denying the defendant/[now] petitioner access to that evidence.  The petitioner's Sixth and Fourteenth Amendment rights under the U.S. Constitution may have been violated; depriving him the

fundamental rights to a fair trial and due process.  The non-disclosure of the
evidence might have violated Brady.  ECF Doc. 7-1 at 357.

On August 28, 2015, Lusane filed a supplemental brief adding the following claim to his

petition:

Petitioner was denied his Sixth Amendment right to effective assistance of
counsel.  Trial counsel was ineffective, failing to present relevant evidence to
make a prima facie case in the hearing to dismiss the felony OVI charge.  ECF
Doc. 7-1 at 401.

On October 20, 2015, Lusane filed a second supplemental brief adding the following

claim to his petition:

The trial court failed to sign the judgment of conviction in Case No. 2013 CR
0443.  Thus, failing to comply with a fatal requirement pursuant to Ohio Criminal
Rule of Procedure 32(C) renders the petitioner's conviction and sentence void.
ECF Doc. 78-1at 446.

On January 21, 2016, the trial court dismissed Lusane's post-conviction petition because

all of his claims were barred by *res judicata*.  The court also found that some of the claims were

meritless.  ECF Doc. 7-1 at 561-565.

On January 28, 2016, Lusane filed a *pro se* appeal to the Ohio Court of Appeals.  ECF

Doc. 7-1 at 567.  Lusane asserted three assignments of error:

1.  The trial court erred by improperly using res judicata as the basis for
    dismissing appellant's petition before the decision of his first appeal of right
    in the OVI case.

2.  The trial court erred by issuing insufficient findings and conclusions of law
    that make no reference to the specific portion of the file or record supporting
    the court's findings and that contradict the allegations in the petition,
    affidavits and evidence dehors the record.

3.  The trial court erred by not holding an evidentiary hearing pursuant to Ohio
    Rev. Code § 2953.21(E) where the evidence dehors the record established
    substantial grounds supporting appellant's claim that he was denied effective
    assistance of counsel in the OVI case.

5

ECF Doc. 7-1 at 581-583.  The state filed a brief in opposition (ECF Doc. 7-1 at 601), and

Lusane replied.  ECF Doc. 7-1 at 615.  On September 19, 2016, the Ohio Court of Appeals

affirmed the judgment of the trial court.  ECF Doc. 7-1 at 629.

On November 3, 2016, Lusane filed a *pro se* notice of appeal with the Ohio Supreme

Court.  ECF Doc. 7-1 at 639.  His memorandum in support of jurisdiction asserted three

propositions of law:

1. The dismissal of a petition pursuant to Ohio Rev. Code § 2953.21(C) based on *res judicata* while a defendant's first appeal of right is pending violates a defendant's right to Due Process, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

2. The finding of fact and conclusions of law that do not adhere to Ohio Rev. Code § 2953.21(C) by making reference to the specific portions of the files or record supporting the court's findings and that contradict the allegations in the petition, affidavits and any supporting evidence violates a defendant's right to Due Process, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

3. The denial of an evidentiary hearing after a defendant has provided supporting documentary evidence establishing substantial grounds for relief under Ohio Rev. Code § 2953.21(E) violates defendant's right to Due Process, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

ECF Doc. 7-1 at 642.  On April 19, 2017, the Ohio Supreme Court declined to accept

jurisdiction.  ECF Doc. 7-1 at 673.

### D.  Motion to Vacate Conviction and Dismiss Indictment

On March 7, 2017, Lusane filed a *pro se* motion to vacate conviction and dismiss the

indictment.  ECF Doc. 7-1 at 674.  Lusane argued that there was no evidence of a prior felony

OVI conviction and that the repeat OVI offender specification should not have been applied.

ECF Doc. 7-1 at 674-675.  On March 10, 2017, the trial court denied Lusane's motion.  ECF

Doc. 7-1 at 677.

On April 11, 2017, Lusane filed a *pro se* notice of appeal with the Ohio Court of

Appeals. ECF Doc. 7-1 at 678. His appellate brief raised the following assignments of error:

1. The prosecuting attorney failed in violation of ethical rules of professional
   conduct 3.5, 8.4 and Criminal Rule 16, to disclose exculpatory evidence to the
   jury that appellant did not have a prior felony OVI conviction which is
   required in charging the repeat OVI offender specification under Ohio Rev.
   Code § 2941.1413.

2. The trial court erred by not dismissing the indictment pursuant to Crim R.
   48(B) where appellant did not have a prior felony OVI conviction to apply the
   repeat felony specification making the judgment void.

3. The trial court erred by granting no reason for denying appellant's motion to
   vacate the conviction and dismiss the indictment therefore the judgment was
   not a final appealable order.

ECF Doc. 7-1 at 689. The state filed a brief in opposition. ECF Doc. 7-1 at 702. On May 7,

2018, the Ohio Court of Appeals affirmed the judgment of the trial court. ECF Doc. 7-1 at 715.

On June 11, 2018, Lusane filed a *pro se* notice of appeal with the Ohio Supreme Court.

ECF Doc. 8-1 at 1. His memorandum in support of jurisdiction raised three propositions of law:

1. The prosecuting attorney failed in violation of ethical rules of professional
   conduct 3.5, 8.4 and Criminal Rule 16, to disclose exculpatory evidence to the
   jury that appellant did not have a prior felony OVI conviction which is
   required in charging the repeat OVI offender specification under Ohio Rev.
   Code § 2941.1413.

2. The trial court erred by not dismissing the indictment pursuant to Crim. R.
   48(B) where appellant did not have a prior felony OVI conviction to apply the
   repeat felony OVI specification making the judgment void.

3. The trial court erred by giving no reason for denying appellant's motion to
   vacate the conviction and dismiss the indictment.

ECF Doc. 8-1 at 4. The state filed a response on June 20, 2018. ECF Doc. 8-1 at 33. On August

1, 2018, the Ohio Supreme Court declined to accept jurisdiction. ECF Doc. 11-1 at 1.

**E.     Motion to Revise Sentencing Judgment in Portage County Municipal Court, R2005TRC11364**

Lusane continued to collaterally attack the underlying conviction from the Portage County Municipal Court, Ravenna Division, Case No. R2005TRC11364.[3]  On September 3, 2019, the Ohio Court of Appeals found that the trial court violated Crim. R. 32(C) by failing to issue a single entry setting forth both the conviction and sentence.  The trial court's judgment was reversed and remanded.  The Ohio Court of Appeals opined:

{¶ 1}   Appellant, Matthew M. Lusane, appeals the denial of his motion to revise his sentencing judgment.  As asserted, the trial court has not issued a single judgment setting forth both the fact of conviction and sentence.

{¶ 2}   The trial court noted on the case file jacket that appellant plead [*sic*] guilty to operating a vehicle while intoxicated.  That notation is time-stamped but not signed and does not find appellant guilty.  Separately, in a judgment entry, the trial court imposed a thirty-day jail term, suspended appellant's driver's license for two years, and fined him $550 and court costs.  That judgment does not find appellant guilty.

{¶ 3}   Appellant appeals the denial of his motion to issue a single judgment setting forth the fact of conviction and sentence:

{¶ 4}   "The trial court abused its discretion by denying defendant-appellant's motion to revise the 2005 sentencing journal entry where it fails to comply with Crim. R. 32(C)."

{¶ 5}   Appellant is entitled to, but did not receive, a single entry setting forth the fact of conviction and sentence. Crim. R. 32(C); *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, paragraph one of the syllabus. Failure to grant his motion constitutes reversible error.  *State ex rel. Daniels v. Russo,* 156 Ohio St.3d 143, 2018-Ohio-5194, 123 N.E.3d 1011.

{¶ 6}   Accordingly, the trial court's judgment is reversed and remanded.

*State v. Lusane,* 11th Dist. Portage No. 2019-P-0027, 2019-Ohio-3549.

---

[3] Respondent Bracy did not include these materials in the state court record, presumably because they are from a different case than the case (2013CR0443) challenged in Lusane's habeas petition.  ECF Doc. 1 at 1.

On November 22, 2019, the trial court issued a judgment entry stating that Lusane's motion to issue a single judgment setting forth the fact of conviction and sentence was well taken, pursuant to Crim. R. 32(C).  The court issued a single revised sentencing judgment containing both Lusane's conviction - guilty of operating a vehicle while intoxicated - and his sentence.  ECF Doc. 58-1 at 4.

## III.    Federal Habeas Petition

On March 19, 2018, Lusane, filed a *pro se* petition for writ of habeas corpus.  ECF Doc. 1.  Lusane's petition asserts six claims:

**Ground ONE:**
The trial court erred in denying appellant's motion to dismiss the felony indictment where appellant established a prima facie case that one of the cases used to enhance his current charge to a felony was constitutionally infirm (hereinafter "ghost conviction") violating his 14th amendment rights under the U.S. Constitution.  ECF Doc. 1 at 5.

**Supporting facts:**  Petitioner testified, April 1, 2014 in the pretrial hearing to dismiss the indictment that he never pled guilty, never was present in court with counsel to waive his trial rights and no record exists showing that Ms. Collins, the Portage County Official Court Reporter wrote a letter to his previous attorney after searching through audio recordings, steno and personal notes stating, "… there is absolutely no record that is able to be transcribed of your client entering a plea in the courtroom on December 27, 2005."  Hence a "ghost conviction."  Ms. Collins's letter was admitted as evidence.  Note in that hearing Petitioner also proffered transcripts in which she gave supporting testimony [transcript & audio disc] later submitted in his post-conviction petition under R.C. 2953.21 filed June 8, 2015.  The specific claim was: conviction rendered in the Ravenna OVI was absent a plea or trial, assistance of counsel, plea colloquy, waiver of rights, notice; and therefore, the conviction could not be used to enhance and sustain an indictment.  After a prima facie showing that the Ravenna OVI was constitutionally infirm, it further prejudiced Petitioner by using it to enhance to felony status, but for without it, he would have only faced a misdemeanor charge, not a felony.

**Ground Two:**
Trial counsel was deficient, not reasonably competent, and counsel's deficiencies prejudiced petitioner by failing to investigate the case, subpoena witnesses and he withheld exculpatory evidence provided by the state to use at trial, violating

petitioner's 6th Amendment right to counsel under the constitution.  ECF Doc. 1 at 6.

**Supporting facts:**  At a hearing April 1, 2014 to dismiss the indictment, Petitioner through and by Attorney Walter T. Madison challenged the usability of the Ravenna OVI, Case No. 2005 TRC 11364 to enhance the current OVI to felony status.  Mr. Madison failed to admit transcripts & audio recording of Ms. Collins, the Portage County Court Reporter testifying that she was in court December 27, 2005 and there is no record of Petitioner entering a plea nor was a hearing held the day conviction was rendered December 27, 2005.  Further, he failed to subpoena Ms. Collins to reaffirm the absence of records required to prove a conviction was obtained in accordance to law, as it appears from the record of the Ravenna OVI that it is, in fact, void.  The Ravenna Municipal Court is a court of record as such the Official Reporter is the custodian of the best evidence of the proceedings, if they do not exist absent an agreement by the parties the proceedings never took place.  Mr. Madison failed to appeal the denial of the motion to dismiss the indictment.  Furthermore, he failed to file a demand for discovery, and withheld exculpatory evidence by failing to inform the court that the state provided, the defense, with a false dispatch tape in which he was in possession of and knew it to be false.  Mr. Madison did not file a motion to compel the state to disclose the tape, nor did he investigate whether a call ever was taken by the Ravenna Police Department pursuant to the police report.  Mr. Madison's performance and incompetence prejudiced Petitioner's right to counsel as certain legal defenses to the stop were abandoned and where the witnesses' account of events were in question could impeached them, resulting in a dismissal of the felony OVI case because there was no reasonable suspicion, nor probable cause for the stop.  Similarly, Petitioner's 5th and 14th Amendment rights under the U.S. Constitution were also affronted.

**Ground Three:**
The felony OVI conviction is null and void because the trial court judge failed to sign the judgment of conviction as required by criminal rules of procedure 32(C) depriving petitioner of his 14th Amendment rights under the U.S. Constitution. ECF Doc. 1 at 8.

**Supporting facts:**
The judgment of conviction was not signed by a judge as the markings are not related to the English language to confirm who or what made the markings.  Two judgment entries were admitted as evidence in support to show the fatal defect. On the August 28, 2012 judgment entry in a separate case [State of Ohio v. Michael A. Carver, Jr., Case No. 12CR395, Portage County Common Pleas] it appears that the trial judge's name can be partially identified, the September 3, 2014 judgment entry for Petitioner was not signed.  On the face of the judgment it is clear that Petitioner's judgment entry was not signed by a judge.  The failure strips the court of its jurisdiction *ab initio* making the conviction void as there was

10

no final appealable order in accordance to law.  Petitioner's 14th Amendment rights were violated under the U.S Constitution.

**Ground Four:**

Cumulative prosecutorial misconduct violated petitioner's 5th, 6th and 14th Amendments under the U.S. Constitution.  ECF Doc. 1 at 9.

> I.   Prosecutor used a prior misdemeanor OVI conviction that is constitutionally infirm to enhance the misdemeanor to felony status.
>
> II.  Prosecutor added a Felony Repeat OVI Offender specification to the indictment where petitioner had not previously been convicted of felony OVI again the prosecutor misled grand jury to obtain the specification with constitutionally infirm prior misdemeanor OVI's.

**Supporting facts:**

Prior to the Grand Jury proceedings, Portage County Prosecutors were equipped with all exculpatory evidence to show probable cause and evidence to the contrary.  This case is sustained by five prior misdemeanor OVI convictions accumulated within twenty years, but for without one, Petitioner would have only faced a misdemeanor, not a felony.  Here, the prosecutor presented and misled the Grand Jury with a prior misdemeanor OVI conviction that was uncounseled and constitutionally infirm to obtain an indictment for felony OVI adding specifications requiring mandatory prison terms.  Subsequent to the investigative states, a hearing was held April 1, 2014 where Petitioner testified to his absence in court when conviction was rendered in the misdemeanor Ravenna OVI, Case present for a plea/sentencing hearing December 27, 2005.  IT IS A GHOST CONVICTION.  Further, Petitioner proffered a letter and transcripts as evidence of Ms. Collins (Portage County Court Reporter) stating the fact absolutely no records exist showing Petitioner entered a plea and more importantly that no hearing occurred December 27, 2005 for the Ravenna OVI.  Though there was a prima facie showing of constitutional infirmity so, that the Ravenna OVI could not be used to enhance, the prosecutor knowingly proceeded to use and mislead the grand jury with the fraudulent and void conviction.  Furthermore, the specifications added to the indictment requiring mandatory prison terms are reserved for offenders who have previously been convicted of felony OVI.  The prosecutor was well-informed Petitioner had never been convicted of felony OVI, but reluctantly chose to add the Repeat Felony OVI Offender Specification to the indictment.  After a jury trial, at the sentencing hearing August 26, 2014, the trial judge took judicial notice and made reference to the record that Petitioner had never been convicted of felony OVI, the prosecutor without advancing the exculpatory evidence stayed silent as Petitioner was sentenced to four years mandatory, just for the specification and two years for the underlying offense totaling a six year prison term for the victimless, non-violent and sole fourth degree felony.  It is clear that, this Petitioner would only be guilty of a

misdemeanor, but for the misconduct of the prosecutor in misleading a grand jury and then misleading the trial court by standing silent with known exculpatory evidence.  It is constitutionally repugnant to all jurist for anyone to be found guilty of a crime based upon a "Ghost Conviction."

**Ground Five:**
The trial court erred by not dismissing the indictment pursuant to Crim. R. 48(B) where appellant did not have a prior felony OVI conviction to apply the repeat felony OVI specification making the judgment void.  ECF Doc. 1 at 11.

**Supporting Facts:**
Judge Laurie J. Pittman failed to dismiss the indictment after a hearing was held April 1, 2014 where uncontroverted testimony was given: proving Petitioner had not previously been convicted of felony OVI.  At the conclusion of the hearing Judge Pittman had an affirmative duty to dismiss the indictment because it was fatally defective, in that, without a prior felony conviction Petitioner could not have been convicted of a repeat offender specification with a mandatory prison term.  Solely relying on prior misdemeanor constitutionally infirm OVI's were presented to the jury, but again Judge Pittman failed to invoke her authority under Crim. R. 48(B) to prevent a manifest injustice.  Further, at the sentencing hearing on August 15, 2014 Judge Pittman did not dismiss the indictment nor at the resentencing August 26, 2014 did she dismiss, even after on her own taking actual judicial notice that Petitioner had not previously been convicted of felony OVI to justify the additional sixty month potential maximum mandatory sentence for the single felony of the fourth degree.  Furthermore, Petitioner's trial counsel made an oral Crim. R. 29 motion for acquittal because of enhancements due to the "Ghost Conviction" being used to sustain the indictment, but for without it, Petitioner would only have faced a misdemeanor charge.  The judge after the Crim. R. 29 motion was reluctant to invoke her authority under Crim. R. 48(B) by dismissing the indictment.  Judge Laurie J. Pittman was in violation of Ohio Code of Judicial conduct 1.1, 2.2, 2.15 creating a manifest injustice violating Petitioner's 5th and 14th Amendment rights under U.S. Constitution.

**Ground Six:**
The state's failure to provide the 911/*677 emergency call deprived the petitioner of his 6th and 14th Amendment rights and his confrontation rights under the U.S. Constitution.  ECF Doc. 1 at 13.

**Supporting Facts:**
According to the record the Portage County Prosecutor's Office has a "routine open file discovery policy" where a copy of all evidence is supposed to be provided to Petitioner's counsel [Mr. Leonard Brieding II was his first attorney], but was not.  This case involves a traffic incident which must be sustained by reasonable suspicion or probable cause to enable law enforcement to stop a citizen.  Here, the Ohio Highway Patrol claims that they received an emergency call reporting Petitioner's driving, but the discovery packet did not have an audio

recording, nor transcript of the witness's call.  Patrolman Krug states at the proceedings, the call was his sole reason for stopping Petitioner, while Petitioner was not cited for a moving violation that would otherwise justify the stop.  During the motion hearing to suppress the stop Petitioner's counsel made a request for the audio recording which was granted, but the Assistant Prosecutor Muldowney failed to produce the recording.  Instead after the hearing to suppress, Mr. Muldowney presented a recording of a 3rd party misrepresenting it to be the recording of the witness son the 911/*667 call, as the pretense for warranting the stop by the law officer, a misconduct and fraud upon Petitioner and the Court. This false recording restricted Petitioner's counsel and ability to confront the witnesses against Petitioner, and required the jury to rely upon hearsay evidence.

## IV.    Factual Background

We begin with a recitation of the factual findings of the Ohio courts.  Following a

suppression hearing, the trial court made the following findings of fact on May 6, 2014:

On or about July 14, 2013 Craig Horbus, an Ohio Attorney, was traveling with his wife Marci from Canton, Ohio heading towards Portage County, Ohio.  The witness testified that they had just merged from the central interchange Route 77 North heading on to Route 76 East, towards Portage County.  It was after seven in the evening.

After Mr. and Mrs. Horbus merged onto Route 76 East, they noticed a blue minivan in front of them with a bumper hanging noticeably off the front passenger side of the vehicle.  It seemed to be flapping in the wind as the driver drove down Route 76.

The witness followed the blue van east on Route 76 and noticed that it swerved off the road, toward the concrete barriers that separate the highway.  Mr. Horbus then noticed the vehicle swerved back into the passing lane, kicking up debris in the process.

Horbus and his wife observed several other lane violations, and near misses with other vehicles due to the bumper hanging off the blue van and the Defendant's erratic driving.  They also noticed the driver of the van over correcting and driving too close to other vehicles.

The witness testified that they followed the blue minivan for a few more miles on Route 76 and saw a few incidents where the Defendant's bumper almost hit other vehicles beside him.

When the Horbus's entered Portage County, from Summit, around Brimfield Township, they noticed the *6-7-7 impaired driver sign, and decided to call and report the blue minivan.

Marci Horbus called the number on her cell phone and explained to the dispatcher that the blue minivan's driver was driving dangerous and erratic.

In his testimony, Mr. Horbus indicated that he had never called the impaired driver number before, nor had his wife, but they felt the instant matter warranted a call because the driving was so dangerous.

Mrs. Horbus identified the vehicle to the dispatcher and she and her husband, stayed behind the blue minivan until it was pulled over by the State Trooper.  The dispatcher stayed on the phone with Mrs. Horbus until the vehicle was pulled over and identified by them and relayed to the Trooper.

Shortly after the Route 43 Exit, a Trooper appeared in a marked vehicle and pulled behind the Defendant's vehicle.  He proceeded to follow the Defendant for a short distance, activated by overhead lights, and pulled the Defendant over before the Route 44 Exit.  Again, the witnesses were asked if the Trooper had pulled over the vehicle they had been following since Summit County, and they advised that the right vehicle was pulled over by the Trooper.

Later Mr. Horbus did go to the State Highway Patrol headquarters, and made a formal, written/typed statement.

Trooper Krug, who was on duty the date in question and was wearing an official O.S.P. uniform, driving a properly marked vehicle.  He testified at the hearing as to the probable cause for the stop and the investigation leading up to the arrest of the Defendant.

The Trooper testified that he has been a trooper for eight years, and that he is certified as an Officer in the State of Ohio.  Krug testified that he has specialized training in observing and recognizing people under the influence of alcohol, and that he successfully completed the A.D.A.P. training.

The Trooper testified that on July 14, 2013, he came into contact with Matthew Lusane, after his post received a R.E.D.D.I report or *6-7-7 call regarding a dangerous driver.  The dispatcher relayed the information regarding the description of the vehicle and its location to the Trooper.  Krug was near 44 and Route 5, so he went to the area described by dispatch.  He sat in the crossover area near the Route 44 Exit on Route 76 and waited for the vehicle.

When the vehicle approached the Trooper, the dispatcher related from Mrs. Horbus that the vehicle was approaching.  The Trooper identified the vehicle and pulled out behind it and followed it a short distance.

The Trooper observed the Defendant's car switch from the right lane to the left lane.  He saw the Defendant's vehicle travel off the left side of the roadway over to the yellow solid line, near the grass and then corrected.

After seeing the lane violation, and based on the R.E.D.D.I call, the Trooper activated his overhead lights and pulled the Defendant over.

The Trooper approached the vehicle on the passenger side, and engaged the Defendant in a brief conversation.  Krug noticed that there was a strong odor of alcohol coming from the inside of Lusane's vehicle, so he asked him to step out of the van.

Trooper Krug continued a conversation with the Defendant and determined that the smell of alcohol was coming from the Defendant's person.  Lusane was then asked to perform three field sobriety tests, to which he did not comply and cooperate.

Based on the description of Mr. Lusane's driving by the witnesses in the R.E.D.D.I (*6-7-7) call, the Trooper's personal observations of Defendant's driving, it is clear that the Trooper had probable cause to pull over the Defendant's vehicle and investigate further.

Looking at the totality of the evidence, the Defendant's driving, the strong odor of alcohol and the failure to perform the Field Sobriety Tests, the Trooper had probable cause to arrest the Defendant for O.V.I.

ECF Doc. 7-1 at 49-52.

Also on May 6, 2014, following a hearing on Lusane's motion to dismiss/motion in

limine, the trial court made the following findings:

During the hearing, the State of Ohio provided the Court with a certified copy of Defendant's driving record (Exhibit 1), which was identified and admitted into evidence.  Said driving record showed twenty-four open driving suspensions and Defendant's prior OVI convictions in August 2012, December 27, 2005, December 6, 2005, July 7, 2005, May 12, 2000 and July 6, 1995.

The Trooper identified the Defendant in court and testified that (State's Exhibit 1) was a true and accurate copy of the Defendant's driving record on July 14, 2013. The State of Ohio further produced (State's Exhibit 2), which was identified and contained a journal entry showing the Defendant's OVI conviction in 2000.  Said exhibit was further identified by the Defendant at the hearing, and testimony was given that he entered a plea to that charge and was represented by an attorney at plea and sentencing on a second offense OVI (Case Number 00 TRC 510).

(State's Exhibit 3) was provided to the Court and testimony was given by the Trooper and Defendant as to its authenticity.  The exhibit contained a journal entry, which showed that Defendant was convicted of a Third Offense OVI on

December 27, 2005 in (Case Number 05 TRC 11365).  The Defendant testified he was represented at plea and sentencing on this case.[4]

The State then produced (State's Exhibit 4), which was identified by the Trooper and the Defendant, as an OVI conviction stemming from a charge in Canton, Ohio.  Said conviction was treated, for sentencing purposes, as a Second Offense OVI  The Defendant testified he was represented at plea and sentencing, which occurred in July 2005.

(State's Exhibit 5) was produced and testified to by Trooper Krug and the Defendant, as an OVI conviction stemming from a charge in Canton, Ohio.  Said conviction was treated, for sentencing purposes, as a Second Offense OVI  The Defendant testified he was represented at plea and sentencing, which occurred in July 2005.

The last exhibit introduced by the State was (State's Exhibit 6), which was a Felony Indictment, heard in Judge Enlow's court, in (Case Number 11 CR 00029).  The Trooper and Defendant both identified the exhibit.  The Defendant, Matthew Lusane, was the Defendant indicted in that case.  Lusane further testified that he was represented in (Case number 11 CR 00029), which was plead [*sic*] down, for sentencing purposes to a Third Offense O.V.I.

From the testimony and evidence, it is clear that the Defendant was charged and convicted of O.V.I. violations; starting as a juvenile in July of 1995, and then as an adult in May 2000, July 2005, December 6, 2005, December 27, 2005, and in August 2012.  In each of these OVI cases, the Defendant was represented by counsel and entered into a plea knowingly, intelligently, and willingly.

ECF Doc. 7-1 at 59-61.

The Ohio Court of Appeals made the following findings of fact:

{¶ 3}   Appellant moved the trial court to dismiss all OVI counts on the basis that one of the five prior offenses listed in the indictment was invalid.  Appellant argued that the conviction in Portage County Municipal Court Case No. 2005 TCR 11364 could not be used against him because, even though the judgment entry states that he entered a guilty plea to the OVI offense, in fact no plea

---

[4] Lusane has filed a hearing transcript from 2011 wherein he testified that he was cited for two D.W.I. offenses in August and September 2005.  He remembered appearing at the Kent Municipal Court and pleading guilty (ECF Doc. 58-2 at 10), but he did not remember pleading guilty at the Ravenna Municipal Court for the other D.W.I.  ECF Doc. 58-2 at 11.  At this hearing, a court reporter from the Ravenna Municipal Court testified that the reporter's personal notes from December 27, 2005 did not reflect any appearance by Lusane in court that day.  ECF Doc. 58-2 at 32-36.  Lusane was represented by Attorney Michael George in December 2005.  ECF Doc. 58-2 at 9.

hearing was held.  In support, appellant attached to his motion a letter from a municipal court reporter asserting that a review of her 2005 calendar did not reveal any notation showing that a hearing took place as stated in the judgment entry.  Accordingly, appellant contended that, as he had only four valid prior convictions, he could only be charged with a first-degree misdemeanor OVI offense, as compared to a fourth-degree felony.

{¶ 4}   The trial court conducted an evidentiary hearing.  In conjunction with the testimony of the state trooper who arrested appellant on the two underlying OVI charges, the state introduced several documents from the record at issue in the municipal court case.  Included therein were copies of two pretrial reports, both of which contained notations that appellant entered a "plea" to the OVI offense.  The packet also had a copy of the final sentencing judgment.  In response, appellant testified regarding the substance of the court reporter's letter and the futile efforts of his previous attorney to have the municipal court conviction vacated.  On cross-examination, he acknowledged that his signature was on one of the pretrial reports from the municipal court case, and that both pretrial reports were signed by his attorney.

{¶ 5}   In its written judgment denying the motion to dismiss, the trial court found that the state's evidence was sufficient to show that appellant had at least five valid prior convictions for OVI.  The trial court further found that appellant was represented by legal counsel in each of the prior cases.  The court accordingly concluded that he could be charged with felony OVI.

ECF Doc. 7-1 at 309-310; *State v. Lusane,* 11th Dist. Portage No. 2014-P-0057, 2016-Ohio-267.

These state court factual findings are presumed correct unless Lusane rebuts them by clear and

convincing evidence.  28 U.S.C. § 2254(e)(1); *Moore v. Mitchell,* 708 F.3d 760 (6th Cir. 2013).

## V.     Law and Analysis

### A.     AEDPA Standard of Review

A state prisoner's claims for habeas corpus relief are governed by AEDPA, which

includes a standard of review that gives significant deference to the decisions made by the state

courts on the federal constitutional issues raised in a habeas corpus petition.  *See Penry v. Johnson*,

532 U.S. 782, 791, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001); *Wilson v. Parker*, 515 F.3d 682, 691

(6th Cir.2008).  AEDPA imposes a "highly deferential standard for evaluating state-court rulings,"

*Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and "demands

that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279, (2002) (per curiam).

When the claim presented in a habeas corpus petition has been presented to and decided on the merits by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts in light of the evidence that was presented.  28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In applying this statute, the Supreme Court has held that "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one."  To obtain habeas corpus relief, a petitioner must show the state court's decision was not only legally wrong but also "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement."  *Bobby v. Dixon*, 565 U.S. 23, 24, 132 S. Ct. 26, 181 L. Ed. 2d 328 (2011), quoting *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Harrington v. Richter*, 562 U.S. at 102-103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 50, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J.,

concurring in judgment)).  In short,"[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."  *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

**B.      Ground One**

Lusane's Ground One claim asserts that the trial court erred by denying his motion to dismiss the felony charge in the indictment because one of the underlying convictions used to enhance the charge was infirm.  Warden Bracy argues that Ground One lacks merit and is noncognizable.

**1.      Merits Review**

The Ohio Court of Appeals rejected Lusane's argument that one of his underlying convictions was infirm and found that he was attempting to collaterally attack the validity of the municipal court conviction.

{¶ 10}  Under his first assignment, appellant maintains that the trial court erred in concluding that the state could employ his prior conviction in Portage County Municipal Court Case No. 2005 TCR 11364 to enhance the OVI charges in the underlying case to fourth-degree felonies.  He submits that this specific conviction must be declared invalid because there is no evidence that the municipal court conducted the required Crim. R. 11(C) hearing prior to accepting his guilty plea. According to appellant, the fact that no plea hearing took place resulted in a jurisdictional error rendering the prior conviction unenforceable for enhancement purposes.

{¶ 11}  In asserting this argument before the trial court and this court, appellant is attempting to collaterally attack the validity of the municipal court conviction.  In relation to this type of challenge to a criminal conviction, the Supreme Court of Ohio has noted:

{¶ 12} "Generally, a past conviction cannot be attacked in a subsequent case. However, there is a limited right to collaterally attack a conviction when the state proposes to use the past conviction to enhance the penalty of a later criminal offense. A conviction obtained against a defendant who is without counsel, or its corollary, an uncounseled conviction obtained without a valid waiver of the right to counsel, has been recognized as constitutionally infirm. *State v. Brandon* (1989), 45 Ohio St.3d 85, 86, 543 N.E.2d 501; *Nichols v. United States* (1994), 511 U.S. 738, 114 S. Ct 1921, 128 L.Ed.2d 745." *State v. Brooke,* 113 Ohio St.3d 199, 2007-Ohio-1533, ¶ 9, 863 N.E.2d 1024.

{¶ 13} Appellant does not contend the municipal court conviction was uncounseled. Instead, he asserts that the prior conviction is constitutionally infirm due to the lack of a Crim. R. 11(C) plea hearing. But, in reviewing the relevant case law, this court has stated that a prior conviction is only subject to collateral attack for one reason. In *State v. Nadock,* 11th Dist. Lake No. 2009-L-042, 2010-Ohio-1161, the defendant argued that his prior convictions for domestic violence could not be used to enhance the degree of the latest charge because, in the prior cases, he was never informed of the effect of the convictions on future charges and was not provided a full explanation of the factual bases for the prior offenses. In holding that the earlier convictions could not be collaterally attacked on those grounds, the *Nadock* court first discussed the initial burden the defendant must carry to show a "constitutional infirmity" in the prior convictions. *Id.* at ¶9. In regard to the nature of the constitutional infirmity, our opinion then stated:

{¶ 14} "With this procedure in mind, however, the only constitutional infirmity that a criminal defendant may allege to collaterally challenge a prior penalty-enhancing conviction is the denial of the fundamental right to be represented by counsel. *State v. Dowhan,* 11th Dist. No. 08-L-064, 2009-Ohio-684, at ¶12, citing *State v. Culberson,* 142 Ohio App.3d 656, 662-663, 2001-Ohio-3261, 756 N.E.2d 734; see, also, *Brandon*, [45 Ohio St.3d] at 86; *Custis v. United States* (1994), 511 U.S. 485, 496, 114 S. Ct. 1732, 128 L.Ed.2d 517; (wherein the Supreme Court expressly refused to extend the right to attack collaterally prior convictions used for sentencing enhancement beyond the right to have appointed counsel. *Id.* at 496). Such an infirmity "'*** consists of a conviction obtained without the assistance of counsel, or its corollary, an invalid waiver of the right to counsel.'" [*State v. Armbruster*, 3d Dist. No. 9-03-15, 2004-Ohio-289], at ¶7, quoting *Culberson*, supra." *Id.* at ¶21. See also, *State v. Lewis*, 11th Dist. Lake No. 2009-L-138, 2010-Ohio-4288.

{¶ 15} The *Nadock* court relied upon the United States Supreme Court's decision in *Custis,* 511 U.S. at 496. *Custis* involved a situation in which a defendant's three prior felony convictions had the effect under federal law of increasing the length of the prison term which could be imposed for illegal possession of a firearm. The *Custis* defendant sought to collaterally attack the prior convictions

20

on three bases: "* * * the denial of the effective assistance of counsel, that his guilty plea was not knowing and intelligent, and that he had not been adequately advised of his rights in opting for a 'stipulated facts' trial." *Id.* The Supreme Court declined to increase the number of acceptable grounds for collaterally attacking a prior conviction, holding that none of the three reasons cited by the defendant rose "to the level of a jurisdictional defect resulting from the failure to appoint counsel" for an indigent defendant. *Id.* The *Custis* court noted that a violation of the right to appointed counsel was considered "a unique constitutional defect." *Id.*

{¶ 16} Focusing upon the use of the phrase "jurisdictional defect" in the *Custis* opinion, appellant postulates that, even though the Custis court rejected the three cited constitutional violations as plausible bases for collateral attack, it left open the possibility that other constitutional violations could be grounds for collateral attack so long as the violations deprive a trial court of jurisdiction over the prior case. Building upon this, he claims that the failure to conduct the Crim. R. 11(C) plea hearing is a jurisdictional defect because his basic due process rights were violated. According to appellant, without a plea hearing, he was denied his fundamental right to be heard.

{¶ 17} Yet, in raising this argument, appellant has not asserted that it was never his intention to plead guilty in the municipal court OVI case, and that he would have stated such to the municipal court if the plea hearing had been held. To this extent, his allegation as to the lack of a plea hearing does not raise a due process concern, but only pertains to the question of whether he entered a valid guilty plea. He is merely arguing that the municipal court did not follow the required procedure for determining whether his guilty plea was made knowingly, intelligently and voluntarily.

{¶ 18} In applying *Custis*, Ohio courts have consistently concluded that a prior conviction cannot be collaterally attacked on the grounds that the guilty plea was invalid due to lack of compliance with Crim. R. 11(C). See *Nadock*, 2010-Ohio-1161, at P22; *State v. Drager*, 2d Dist. Montgomery No. 26067, 2014-Ohio-3056; *State v. Mikolajczyk,* 8th Dist. Cuyahoga No. 93085, 2010-Ohio-75; *State v. Endsley*, 7th Dist. Columbiana No. 04-CO-46, 2005-Ohio-5631.

{¶ 19} There is no dispute that appellant was represented by counsel during the disputed municipal court case. As a result, appellant could not state proper grounds for collaterally attacking this prior OVI conviction. Moreover, since he did not dispute that he had four other prior convictions for OVI, the fourth-degree felony OVI charges were proper and his first assignment of error is without merit.

*State v. Lusane,* 11th Dist. No. 2014-P-0057, 2016-Ohio-267. During the trial court's hearing on

Lusane's motion to dismiss, Lusane admitted that he was represented by counsel at each of the

proceedings resulting in the convictions used to enhance the felony OVI charge.  ECF Doc. 7-1 at 59-61; ECF Doc. 7-4 at 48-49.

Lusane has not cited any U.S. Supreme Court case holding that the Ohio Court of Appeals decision was contrary to or which that court unreasonably applied under the facts of Lusane's case..  Rather, he acknowledges that the court of appeals relied on the U.S. Supreme Court case, *Custis v. United States,* 511 U.S. 485, 496 (1994), but tries to distinguish it.  Lusane attempts to distinguish his case from *Custis* by citing *Mooney v. Holohan,* 294 U.S. 103 (1935), *Moore v. Dempsey,* 261 U.S. 86, 94, 43 S. Ct. 265, 267-268 (1923), and *Frank v. Magnum,* 237 U.S. 309, 325-329, 335 (1915).  ECF Doc. 34 at 9.  But those cases did not involve attempted collateral attacks on prior convictions used to enhance a later-case sentence.  In cases involving attempted collateral attacks on prior convictions, the U.S. Supreme Court has held that the only challenge that may be considered is whether defendant was represented by counsel.  Here, it is undisputed that Lusane was represented in each of his prior OVI cases.  Thus, the Ohio Court of Appeals' decision was not contrary to or an unreasonable application of clearly established federal law, nor did it represent an unreasonable determination of the facts in light of the evidence that was presented.  28 U.S.C. § 2254(d).

Lusane argues that, by failing to provide a notice and hearing on one of his 2005 convictions, the Ohio courts violated his due process rights.  As explained, Lusane is not permitted to challenge the validity of his 2005 conviction in this habeas case.  However, even if he were, his challenge would fail.

As already noted, Lusane cites *Mooney,* 294 U.S. 103, *Moore,* 261 U.S. 86, and *Frank,* 237 U.S. 309, to support his due process argument.  These case are of questionable precedential value due to their age and the considerable changes in constitutional law since they were

22

decided.  Further, habeas law has evolved since then most notably with the enactment of AEDPA.  But more fundamentally these cases don't deal with the issue we face.  In *Mooney,* the Court held that states were required to provide corrective judicial process for the relief of persons convicted and imprisoned for crime without due process of law; and it is to be presumed that states have complied with this duty.

In *Moore,* the Court held that, in the absence of sufficient corrective process afforded by the state courts, when persons held under a death sentence allege facts showing that their conviction resulted from a hurried conviction under mob domination, apply to the Federal District Court for habeas corpus, that court must find whether the facts so alleged are true, and whether they can be explained so far as to leave the state proceedings undisturbed.  *Moore,* 261 U.S. at ¶3 of the syllabus.

And, in *Frank,* the Court held that "if a trial is dominated by a mob so that there is an actual interference with the course of justice, there is a departure from due process of law; and that 'if the State, supplying no corrective process, carries into execution a judgment of death or imprisonment based upon a verdict thus produced by mob domination, the State deprives the accused of his life or liberty without due process of law.'"  *Moore,* 261 at 90-91.  *Frank* also held that defendant's due process rights had not been violated when he was not present for the return of the jury's verdict because he had waived that issue by not raising it in "due season."  *Frank,* 237 U.S. at 345-346.

The common thread in these cases is that states are required to provide corrective procedures for alleged violations of due process.  Here, the state court *did* provide corrective procedures to Lusane.  For example, Lusane moved to withdraw his guilty plea on the 2005 TRC 11364 case.  ECF Doc. 58-2 at 5.  The state court held a hearing and Lusane was represented by

23

counsel at the hearing.  He testified that he did not remember ever going to court to plead guilty in the 2005 TRC 11364 case.  He recalled that two different "D.W.I." charges were filed against him – one in the Kent branch and one in the Ravenna Branch of the Portage County Municipal Court.  Lusane believed that by pleading guilty to the Kent branch charge, the Ravenna branch charge - 2005 TRC 11364 - would be dropped.  ECF Doc. 58-2 at 11-12.  A court reporter testified that her handwritten notes did not reflect that a hearing took place on December 27, 2005 in the Ravenna branch case.  ECF Doc. 58-2 at 32.  Thus, the hearing evidence showed that Lusane did *not remember* the hearing and the court reporter's notes did *not reflect* the hearing.  The Portage County Court concluded that this evidence did not prove that there was no hearing.

Further, when the trial court considered whether, based on this evidence, the court must allow Lusane to withdraw his guilty plea to "correct manifest injustice," the answer was no.  The court stated:

> Well, the Court's heard all the evidence.  The Court's going to take judicial notice of a Motion for Payment Plan signed by Mr. Lusane and Judge Watson allowing Mr. Lusane to do community service in lieu of paying his fines and costs on Case Numbers 99 – Case Numbers listed are 99 CR 374, 2002 CR 278, 2003 CR 374, 2005 TRC 4525-K, that's the Kent case, and 2005 TRC 11364 – which is the Ravenna OVI that Mr. Kane filed a Motion to Vacate his plea on, signed by Mr. Lusane, indicating a total amount of fines and costs due 1,808.90.  The Ravenna case being highlighted.

> I think Mr. Kane makes some interesting legal arguments, and maybe the Court of Appeals will disagree with  me, but I don't think *** I'm doing anything that's manifestly unjust by upholding this conviction.

ECF Doc. 58-2 at 40-41.  In other words, the court found that there was other evidence showing that Lusane had been aware of the conviction in 2005 TRC 11364 and had signed a document agreeing to pay fines and do community service on that charge.  The apparent conclusion is that, had Lusane not pleaded guilty to that charge, he would not have agreed to pay fines and do community service on it.  Because other evidence supported the conviction, Lusane was not

permitted to withdraw his guilty plea in 2005 TRC 11364.  Most importantly from our standpoint, the state court record conclusively shows that Lusane had and took advantage of a state court process to try to correct what he contends was a due process violation concerning one of his 2005 OVI convictions.  He has not identified any clearly established federal law that the Ohio courts violated when they determined the validity of his conviction in the current case or when they determined the validity of his challenged 2005 OVI conviction.

Lusane's memorandum in support of the notice of supplements argues that his conviction in 2005 TRC 11364 was later "voided" by the Ohio Court of Appeals.  ECF Doc. 59 at 2.  But that is not what happened.  The Ohio Court of Appeals neither voided the conviction in 2005 TRC 11364 nor found that it was constitutionally infirm.  Rather, the court held that the trial court's sentencing journal entry did not comply with Ohio Crim. R. 32(C)'s single judgment entry requirement.  *State v. Lusane,* 11th Dist. Portage No. 2019-P-0027, 2019-Ohio-3549.  After the court of appeals reversed and remanded the case, the trial court issued a corrected judgment entry setting forth both the conviction and sentence, in compliance with Ohio Crim. R. 32(C).  ECF Doc. 58-1 at 4.  Thus, it appears that the trial court's entry now complies with Crim. R. 32(C) as directed by the Ohio Court of Appeals.  There was never a ruling that the 2005 TRC 11364 conviction had been "voided."

Lusane's Ground One claim asserts that the trial court erred in denying his motion to dismiss because one of the underlying convictions used to enhance his charge was constitutionally infirm.  There is no merit to this argument.  The state court provided a corrective procedure on Lusane's motion to withdraw his guilty plea with respect to the challenged charge but denied his motion.  Because Lusane had not shown that one of his predicate OVI convictions was "constitutionally infirm," the trial court was not required to dismiss the felony charge.

Moreover, the court of appeals' rejection of Lusane's attempted collateral attack on his 2005 conviction – because it did not assert that his 2005 guilty plea was entered without the benefit of legal representation –was neither contrary to nor an unreasonable application of the U.S. Supreme Court's decision in, *Custis v. United States,* 511 U.S. 485, 496 (1994).

Because Lusane has failed to satisfy the standard for obtaining habeas relief set forth in 28 U.S.C. § 2254(d), I recommend that Lusane's Ground One claim be dismissed for lack of merit.

### 2. Cognizability

Warden Bracy also argues that Lusane's Ground One claim is not cognizable on habeas review. ECF Doc. 7 at 27. She argues that claims for lack of jurisdiction are state law claims noncognizable on habeas review, and that Lusane's claim that the trial court erred by denying his motion to dismiss his felony OVI charge was also a matter of state law. Warden Bracy's argument is difficult to follow. First, Lusane's Ground One claim does not expressly argue that the trial court lacked jurisdiction in his 2013 case.[5] ECF Doc. 1 at 5. Second, Warden Bracy argues that Lusane did not have a constitutional right to have the trial court dismiss his indictment, but then lists some constitutional rights, such as the Sixth Amendment right to counsel and a due process right to a notice of charges, without fully explaining how these relate to her non-cognizability argument.

To the extent that Lusane's Ground One claim alleges violations of Ohio Rev. Code § 2505.02 or Ohio Criminal Rule 32(C), the court agrees that it is non-cognizable. Ohio's

---

[5] He argued that the municipal court had not had jurisdiction in one of his 2005 cases because it did not hold a hearing. But, as explained, the Ohio Court of Appeals properly held that Lusane could not collaterally attack that conviction in his appeal on the 2013 case. *State v. Lusane,* 11th Dist. No. 2014-P-0057, 2016-Ohio-267.

statutory requirements and rules related to judgment entries do not implicate federal constitutional rights or clearly established federal law.  A claim that only alleges that the state courts violated state law obligations is not cognizable in a federal habeas case, and it must be dismissed on that basis unless the state court's state-law ruling violated a federal constitutional right.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.")

State-court rulings on issues of state law may, however, "rise to the level of due process violations [if] they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  They must be "so egregious that [they] result in a denial of fundamental fairness."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  Fundamental fairness under the Due Process Clause is compromised where "the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'"  *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citations omitted).  Courts, therefore, "'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'"  *Id*. (quoting *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)).  Because Lusane had – and took advantage of – multiple state law opportunities to challenge his 2005 predicate OVI conviction, we simply have no basis upon which to conclude the Ohio courts' rulings violated fundamental conceptions of justice.

Because Lusane's Ground One claim lacks merit, it is not necessary to also decide whether Lusane's Ground One claim is cognizable.  *See Lambrix v. Singletary,* 520 U.S. 518, 525, 117 S. Ct. 1517, 137 L. Ed. 2d 771 (1997) (noting that judicial economy may favor addressing the merits rather than seeking to resolve complicated issues of state law); *Hudson v. Jones,* 351 F.3d 212, 215 (6th Cir. 2003); *Bates v. Bell,* 788 F.3d 568, 573 (6th Cir. 2015) (holding that federal courts may address the merits before reaching a final conclusion on procedural default.)  And, because Warden Bracy's cognizability argument is not fully developed, I recommend that the Court dismiss Lusane's Ground One claim because it lacks merit.

### C.    Ground Two

Lusane's Ground Two claim argues that his trial counsel was deficient by failing to investigate and subpoena witnesses and by withholding exculpatory evidence.  ECF Doc. 1 at 6.  Warden Bracy argues that Lusane's Ground Two claim is procedurally defaulted and lacks merit.

#### 1.    Procedural Default

Generally, before we can reach the merits of a habeas petition, we must determine whether the petitioner satisfied the state procedural requirements for litigating his federal claim in state court.  *Bickham v. Winn,* 888 F.3d 248, 250-51 (6th Cir. 2018) (citing *Seymour v. Walker,* 224 F.3d 542, 550 (6th Cir. 2000)).  If he has not satisfied those requirements – and procedurally defaulted his claims – he cannot present the claim in federal court.  *Id.* at 251.

A petitioner seeking a writ of habeas corpus must comply with two procedural requirements, both grounded in the interests of comity and federalism, before a federal court may review the petitioner's claim.  First, the petitioner must exhaust all available opportunities to pursue his claim in state court before he may litigate that claim in federal court.  28 U.S.C. §

28

2254(b)(1)(A).  This exhaustion requirement "is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional violation.'"  *Davila v. Davis,* 137 S. Ct. 2058, 2064, 198 L. Ed. 2d 603 (2017) (quoting *Rose v. Lundy*, 455 U.S. 509, 518, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982)) (alterations in original).  Second, and relatedly, the procedural default doctrine bars our review if the petitioner has not followed the state's procedural requirements for presenting his claim in state court.  *Coleman v. Thompson,* 501 U.S. 722, 732, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).  Thus, a federal court will not review a habeas petition if "the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is 'independent of the federal question and is adequate to support the judgment.'"  *Lovins v. Parker,* 712 F.3d 283, 295 (6th Cir. 2013) (quoting *Coleman,* 501 U.S. at 729-30).

Here, Lusane did not raise his Ground Two claim on direct appeal.  When he raised it later in a motion for post-conviction relief, it was dismissed under the doctrine of *res judicata* because he *could* have, but did not, raise it in on direct appeal.  *See State v. Perry,* 10 Ohio St.2d 175 (1967).  By refusing to consider this argument in his post-conviction petition, the state court enforced a procedural requirement.  Ohio courts regularly apply the doctrine of *res judicata,* which has been found to be an adequate and independent state-law ground to foreclose habeas relief in federal court.  See, e.g., *Landrum v. Mitchell,* 625 F.3d 905, 934 (6th Cir. 2010) ("The Ohio Court of Appeals' reliance on res judicata was an adequate and independent state ground to foreclose habeas relief in federal court."); *Fautenberry v. Mitchell*, 515 F.3d 614, 633 (6th Cir. 2008); *Williams v. Bagley,* 380 F.3d 932, 967 (6th Cir. 2004); *Martin v. Mitchell,* 280 F.3d 594, 604 (6th Cir. 2002).  Thus, Lusane's Ground Two claim is procedurally defaulted unless he can

show cause and prejudice to excuse his failure to exhaust them in state court or that he was actually innocent.

### 2.      Exceptions to Procedural Default

A procedural default may be excused on two bases.  First, procedural default may be excused if the petitioner shows cause and prejudice, *i.e.* that: (1) something external to the defense, which could be fairly attributed to him, prevented him from complying with the state procedural rule; and (2) actual prejudice resulted from the alleged constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  In assessing prejudice, the court assumes that the petitioner has stated a meritorious constitutional claim and proceeds to discern whether a different verdict would have resulted absent the assumed constitutional error.  *Moore v. Carlton*, 74 F.3d 689, 691-92 (6th Cir. 1996); *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003); *see also United States v. Frady*, 456 U.S. 152, 170-72 (1982).  Second, a procedural default may be excused if denying review of the petitioner's claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  Actual innocence means "factual innocence, not mere legal insufficiency," *Bousley v. United States*, 523 U.S. 614, 623 (1998), and must be supported with "new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### a.      Cause and Prejudice

Lusane does not deny that his Ground Two claims were barred by the doctrine of *res judicata* in state court.  He also acknowledges that he did not raise his Ground Two claims in his direct appeal.  ECF Doc. 1 at 7.  For cause, he states that he did not raise this argument on direct

appeal because it relied on transcripts from 2005 TRC 11364 which were not made part of the trial record. That is incorrect. His claim of ineffective assistance of counsel did not rely on the transcripts from 2005 TRC 11364. If fact, his ineffective assistance of counsel claim was partly based on the fact that the transcripts were *not* submitted at trial. Lusane could have raised this issue on direct appeal without the transcripts from the 2005 case. The Ohio Court of Appeals came to a similar conclusion when it briefly considered this argument in Lusane's appeal on the denial of his motion for post-conviction relief. ECF Doc. 7-1 at 634, ¶ 19. Lusane has not demonstrated sufficient cause to overcome his procedural default.

Because Lusane has not established cause for his procedural default, this Court need not address whether he was actually prejudiced. *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000). Nonetheless, Lusane cannot show prejudice because there is no merit to his claim that the transcript or other evidence related to 2005 TRC 11364 would have changed the outcome of his 2013 trial. He was not permitted to collaterally attack the 2005 conviction in his 2013 case. ECF Doc. 7-1 at 634, Thus, his trial attorney could not be faulted for failing to submit it. Lusane fails to show cause or that he was prejudiced by the procedural default of his Ground Two claims.

### b. Actual Innocence

A federal court may review a procedurally defaulted claim, even in the absence of a demonstration of cause and prejudice, to correct "a fundamental miscarriage of justice," as when the petitioner is actually innocent. *Coleman v. Thompson,* 501 U.S. 722, 748, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982)). It is well-established that "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley*

*v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)).  For a petitioner to establish "actual innocence," that petitioner must present new evidence to the habeas court. *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 427 (6th Cir. Ohio 2003).  This "new evidence [will] not rise to the standard of establishing his actual innocence [if] a reasonable juror still could have found [petitioner] guilty [beyond a reasonable doubt] even after considering [the] new evidence."  *Jells v. Mitchell*, 538 F.3d 478, 507 (6th Cir. 2008).  New evidence of actual innocence cannot excuse a procedural default except when that evidence is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."  *Sellers v. Ward*, 135 F.3d 1333, 1338 (10th Cir. 1998) (citing *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)).  New evidence, consequently, can only excuse procedural default in "extraordinary" cases. *Carter,* 443 F.3d at 538.

The undersigned permitted Lusane to supplement the record in this case and carefully reviewed the materials he submitted.  ECF Doc. 58.  His supplements are not new evidence but evidence that (i) existed at the time of his trial or (ii) is based on that evidence.  Further, even if it was new evidence, it would not establish Lusane's actual innocence.  Lusane's main argument is that there is no record of him having pleaded guilty to one of the underlying OVI charges that was used to enhance his 2013 OVI charge.  He doesn't argue that he was innocent of the charge. In fact, the transcript on his motion to withdraw guilty plea shows that Lusane was aware of the second OVI charge in 2005.  ECF Doc. 58-2 at 17-18.  Accordingly, even if he were permitted to collaterally attack the 2005 conviction, it would not establish his actual innocence for purposes of excusing procedural default.

Here, Lusane has not argued that he is innocent.  Nor has he presented any new evidence to establish his actual innocence.  Because the state court applied a procedural bar to Lusane's Ground Two claims and because he has neither demonstrated cause and prejudice to excuse the default nor argued his actual innocence, I recommend that his Ground Two claims be dismissed as procedurally defaulted.

### 3.    Merits Review

Warden Bracy also argues that Lusane's Ground Two claims lack merit.  ECF Doc. 7 at 34.  In *Strickland v. Washington*, the U.S. Supreme Court established that a petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. 466 U.S. 668, 688 (1984).  For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

On direct appeal, Lusane did not assert any assignments of error based on ineffective assistance of counsel.  ECF Doc. 7-1 at 266.  He raised one ineffective assistance of counsel assignment of error in his appeal of the denial of his motion for post-conviction relief.  There, he asserted that the trial court erred by not holding an evidentiary hearing pursuant to Ohio Rev. Code § 2953.21 where the evidence *dehors* the record established substantial grounds supporting his claim that he was denied effective assistance of counsel in the OVI case.  ECF Doc. 7-1 at

583.  That is not the issue raised in his habeas petition.[6]  However, in the body of his appellate

brief he argued that his counsel had failed to investigate and submit evidence showing that his

December 2005 OVI conviction complied with Criminal Rule 11.  ECF Doc. 7-1 at 597.  This

argument more resembles the argument he now asserts in Ground Two of his habeas petition.

The Ohio Court of Appeals rejected Lusane's arguments.  It held that his claims were

barred by the doctrine of *res judicata* and that there was no new evidence that was not available

during direct appeal.  ECF Doc. 7-1 at 634, 636-637.  The court also held that the transcript from

case 2005 TRC 11364 was irrelevant because Lusane was not permitted to collaterally attack that

conviction in his current case.  *Id.*

Lusane has not shown that his trial counsel's representation "fell below an objective

standard of reasonableness."  The trial court was aware of Lusane's argument related to the 2005

TRC 11364 conviction but denied his motion to dismiss because there was independent evidence

apart from the 2005 transcript showing that Lusane had pleaded guilty to that claim.  ECF Doc.

7-1 at 60.  Lusane's trial counsel was not ineffective for failing to investigate or raise this issue at

trial.  The issue *was* raised and rejected by the trial court.  And because he cannot show that his

counsel's representation "fell below an objective standard of reasonableness," he cannot show

any prejudice resulting from deficient performance.

Lusane has not shown that the Ohio Court of Appeals' decision rejecting his ineffective

assistance of trial counsel argument was contrary to or an unreasonable application of clearly

established federal law or based on an unreasonable determination of the facts in light of the

---

[6] A petitioner is limited to raising the same ineffective assistance of counsel claims under the same factual
and legal theories as he previously presented in the state courts.  *Wong v. Money,* 142 F.3d 313, 322 (6th
Cir. 1998).

evidence that was presented.  As a result, he has not met the standard for habeas relief in 28 U.S.C. § 2254(d).  He has not cited any U.S. Supreme Court precedent supporting his argument that he received ineffective assistance of trial counsel in this case.  I recommend that Lusane's Ground Two claims be dismissed because they are procedurally defaulted and because they lack merit.

### D.    Ground Three

Lusane's Ground Three claim asserts that he was deprived due process under the Fourteenth Amendment because the trial judge failed to sign the judgment as required by Ohio's Criminal Rule 32(C).  Warden Bracy argues that this claim is procedurally defaulted and presents only non-cognizable claims.

### 1.    Procedural Default

As with his Ground Two claim, Lusane did not raise his Ground Three claim in his direct appeal.  He raised it in a supplement to his post-conviction petition.  ECF Doc. 7-1 at 446.  But in state court, he did not argue that the trial court's failure to comply with Crim. R. 32(C) violated his due process rights or any other federal right.  *Id.*  The "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'"  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).  Thus, Lusane's Ground Three argument was procedurally defaulted because he never raised it as a federal issue in state court.

To the extent Lusane did raise his Ground Three claim (as a state court issue), the trial court rejected it as barred by *res judicata.*  In so doing, the state court applied a regularly applied procedural bar, which, as discussed above, was an adequate and independent state ground to foreclose habeas relief in federal court.  See, e.g., *Landrum,* 625 F.3d at 934.  As with his

Ground Two claim, Lusane's Ground Three claim was procedurally defaulted unless he can show cause and prejudice for having failed to raise it in his direct appeal or unless he can show by new, reliable evidence that he was actually innocent.

Lusane acknowledges that he did not raise this issue in his direct appeal. As with his Ground Two claim, he states that the supporting evidence was outside the record. ECF Doc. 1 at 8. However, the supporting evidence was clearly not "outside the record." The judgment entry containing the judge's signature was in the record on his direct appeal. ECF Doc. 7-1 at 245-246. Lusane has failed to show "cause" and prejudice for failing to raise this issue in state court.

Nor has Lusane argued that he is actually innocent or submitted any new evidence to establish his factual innocence. Because Lusane's Ground Three claim was procedurally defaulted and because he has not demonstrated cause and prejudice to excuse the default or argued his actual innocence, I recommend that his Ground Three claim be dismissed as procedurally defaulted.

### 2. Non-Cognizable

Lusane's Ground Three claim is also non-cognizable on habeas review. A claim that only alleges violations of state law is not cognizable in a federal habeas case, and it must be dismissed on that basis unless the state court's state-law ruling violates a federal constitutional right. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.").

Lusane's Ground Three claim asserts that the trial court's judgment entry violated state law.  ECF Doc. 34 at 15-16.  His petition then adds a general argument that the judgment violated his due process rights, but does not really explain how it did so.  In order to show a due process violation based on a state court's decision on state law grounds, Lusane must show that the state court's determination was so "fundamentally unfair" that it deprived him of due process.  *Sandoval v. Toledo Corr. Inst.,* 409 Fed. Appx. 847, 850 (6th Cir. 2010) (citing *Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010)) (quoting *Bey v. Bagley,* 500 F.3d 514, 519 (6th Cir. 2007).  "Beyond the specific guarantees enumerated in the Bill of Rights, the due process clause has limited operation.  [The Supreme Court has] defined the category of infractions that violate 'fundamental fairness' very narrowly."  *Dowling v. United States,* 493 U.S. 342, 352, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990).  The Court has defined actions that violate fundamental fairness as only those that implicate the "fundamental conceptions of justice which lie at the base of our civil and political institutions."  *Mooney,* 294 U.S. at 112.

Lusane has not shown that the judge's signature on the judgment entry, even if noncompliant with state law, violated any principle of fundamental fairness protected by federal law.  Thus, his Ground Three claim is not cognizable on habeas review.  I recommend that it be dismissed on that basis in addition to the procedural default discussed above.

### E.    Ground Four

Lusane's Ground Four claim asserts that the prosecutor should not have used the December 2005 OVI conviction to charge him with a repeat offender specification and that the repeat offender specification could not apply to him because he had not previously been convicted of a felony OVI.  As with most of his arguments, Lusane's Ground Four claim is based on his faulty assertion that he cannot be held accountable for a conviction to which he does not

remember pleading guilty and for which no hearing transcript was produced.  He also argues for an interpretation of Ohio law that has been expressly rejected by the Ohio courts, as discussed above.  Lusane's foundational arguments lacks merit.  Warden Bracy also argues that, even when viewed apart from its faulty foundation, Lusane's Ground Four claim lacks merit and is procedurally defaulted.  ECF Doc. 7 at 43-50.

### 1.    Procedural Default

As with his Ground Two and Ground Three claims, Lusane's Ground Four claims are procedurally defaulted.  He did not raise a prosecutorial misconduct argument in his direct appeal, and when he raised it in his motion to vacate the conviction and dismiss the indictment (ECF Doc. 7-1 at 674), the trial court denied the motion.  ECF Doc. 7-1 at 677.  The Ohio Court of Appeals found that this claim lacked merit and was barred by *res judicata*.  ECF Doc. 7-1 at 715-719.  As has been noted already, enforcement of the principle of *res judicata* is an adequate and independent state ground to foreclose habeas relief in federal court.  See, e.g., *Landrum,* 625 F.3d at 934.  As with his Ground Two and Ground Three claims, Lusane's Ground Four claim was procedurally defaulted unless he can show cause and prejudice for failing to raise it in his direct appeal or that he was actually innocent.

Lusane acknowledges that he did not raise this issue in his direct appeal.  He argues that he can raise this argument at any time because it is based on his contention that the indictment and conviction are void.  ECF Doc. 1 at 10.  If the conviction was actually void, this argument could have gained some traction in state court.  But if it had, it would have been based on state law.  Lusane cannot raise this argument in his habeas petition claiming that the underlying state court conviction is void.  He has not shown "cause" to excuse the procedural default of his Ground Four claim.

As with the other claims in his petition, Lusane has not argued that he is actually innocent or submitted any new evidence to establish his factual innocence. Because his Ground Four claim was procedurally defaulted and because Lusane has not demonstrated cause and prejudice to excuse the default or argued his actual innocence, I recommend that his Ground Four claim be dismissed as procedurally defaulted.

### 2.  Merits Review

Warden Bracy also argues that Lusane's Ground Four claim lacks merit. Lusane argues that the prosecutor improperly charged him with a repeat offender specification because Lusane contends that Ohio Rev. Code § 2941.1413(A) requires a previous felony OVI conviction. The Ohio Court of Appeals rejected Lusane's interpretation of the statute:

{¶ 11} Appellant's argument turns on the application of R.C. 2941.1413, the repeat offender specification. Division (A) provides, in pertinent part:

{¶ 12} "(A) Imposition of a mandatory additional prison term of one, two, three, four, or five years upon an offender under division (G)(2) of section 2929.13 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging a felony violation of division (A) of section 4511.19 of the Revised Code specifies that the offender, within twenty years of the offense, previously has been convicted of or pleaded guilty to five or more equivalent offenses."

{¶ 13} In *State ex rel. Beechler v. Rastatter*, 140 Ohio St.3d 343, 2014-Ohio-4061, 18 N.E.3d 433, a criminal defendant filed a petition for mandamus to compel the trial judge to declare his conviction under the repeat OVI offender specification void. He maintained that he could only be found guilty of the specification if all five of his prior OVI convictions were felonies. In rejecting this argument, the *Beechler* court stated:

{¶ 14} "However, the statute does not require the previous OVI convictions to be felonies. R.C. 2941.1413(A) states an additional term of one to five years may be imposed if 'the indictment, count in the indictment, or information charging a felony violation of division (A) of section 4511.19 of the Revised Code specifies that the offender, within twenty years of the offense, previously has been convicted of or pleaded guilty to five or more equivalent offenses.' 'Equivalent offenses' is defined in subsection (B) as having 'the same meaning as in section 4511.181 of the Revised Code.'

39

{¶ 15} "R.C. 4511.181 demonstrates that an 'equivalent offense' need not be a felony. Division (A) of that statute defines 'equivalent offense' as meaning 'any of the following,' listing nine offenses. For example, division (A)(1) lists '[a] violation of division (A) or (B) of section 4511.19 of the Revised Code,' and (A)(2) lists '[a] violation of a municipal OVI ordinance.' These offenses are not necessarily felonies. Violations of R.C. 4511.19(A) and (B) may be misdemeanors. R.C. 4511.19(G)(1)(a) ad (H)(1). In addition, municipal OVI offenses can be misdemeanors. See, e.g., Columbus City Code 2133.01(G)(1)(a). Therefore, an 'equivalent offense' for purposes of the specification under R.C. 2941.1413(A) can be either a felony or a misdemeanor, * * *." *Id.* at ¶10-11.

{¶ 16} Given *Beechler* and the statutory definitions, the five prior OVI convictions can be all misdemeanors, all felonies, or some of each. There is simply no support for appellant's contention that a defendant must have at least one prior felony OVI conviction before he can be found guilty of a repeat OVI offender specification.

{¶ 17} Appellant's conviction and sentence under the repeat OVI offender specification are valid, not void. Therefore, the trial court did not err in denying appellant's motion to vacate, and the prosecutor acted within the bounds of his sound discretion in indicting and trying appellant on the specification. The first two assignments are without merit.

*State v. Lusane,* 11th Dist. Portage No. 2017-P-0013, 2018-Ohio-1775.

Lusane argues that the prosecutor should not have charged and prosecuted him under

Ohio Rev. Code § § 2941.1413(A) because he did not have five valid equivalent convictions. He

bases this argument on the fact that there was no hearing transcript for one of his underlying

convictions and because he had not been previously convicted of a felony OVI. Both of these

predicate arguments lack merit. Because Lusane has failed to show that the Ohio Court of

Appeals' decision was contrary to or an unreasonable application of clearly established federal

law or based on an unreasonable determination of the facts in light of the evidence that was

presented, I recommend that Lusane's Ground Four claim be dismissed for lack of merit.

Although Warden Bracy did not raise a cognizability argument, the court also notes that

Lusane's Ground Four claim is based entirely on state law. See ECF Doc. 34 at 17-20. As

discussed above, a claim that only alleges violations of state law is not cognizable in a federal

habeas case, and it must be dismissed on that basis unless the state court's state-law ruling violates a fundamental federal constitutional right.  *See Estelle*, 502 U.S. at 68.  I recommend that Lusane's Ground Four claims be dismissed because they are procedurally defaulted, lack merit and only allege state law violations not cognizable on habeas review.

### F.      Ground Five

Lusane's Ground Five claim is dependent (again) on his assertion that he could not lawfully be charged with a repeat OVI offender specification because there was no transcript from one of his prior misdemeanor OVI cases and because he did not have a prior felony OVI conviction.  As already explained, these predicate arguments lack merit.  Warden Bracy argues that Lusane's Ground Five claim is procedurally defaulted, lacks merit and only raises noncognizable state law issues.  ECF Doc. 7 at 50-56.

#### 1.      Procedural Default

As with his Ground Two, Ground Three and Ground Four claims, Lusane's Ground Five claim was procedurally defaulted.  He did not raise it in his direct appeal, and when he did raise it in his motion to vacate the conviction and dismiss the indictment (ECF Doc. 7-1 at 674), the trial court denied the motion.  ECF Doc. 7-1 at 677.  The Ohio Court of Appeals found that Lusane's argument on this claim lacked merit and was barred by *res judicata.*  ECF Doc. 7-1 at 715-719.  As has been noted already, *res judicata* is an adequate and independent state ground to foreclose habeas relief in federal court.  See, e.g., *Landrum,* 625 F.3d at 934.  As with his Ground Two through Ground Four claims, Lusane's Ground Five claim was procedurally defaulted unless he can show cause and prejudice for not having raised it in his direct appeal or that he was actually innocent.

Lusane acknowledges that he did not raise this argument in his direct appeal.  He argues that he can raise it at any time because it is based on his contention that the indictment and conviction are void.  ECF Doc. 1 at 12.  As discussed above, if Lusane's 2005 OVI conviction was actually void, this argument could have gained some traction in state court.  But if it had, it would have been based on state law.  For the reasons discussed above, Lusane cannot argue here that the prior state court conviction is void.  He has not shown cause to excuse the procedural default of his Ground Five claim.

Nor has Lusane argued that he is actually innocent or submitted any new evidence to establish his factual innocence.  Because Lusane's Ground Five claim was procedurally defaulted and because he has not demonstrated he is entitled to have that default excused, I recommend that Lusane's Ground Five claim be dismissed as procedurally defaulted.

## 2.    Merits Review

As already explained, the Ohio Court of Appeals rejected Lusane's argument that one of his prior OVI convictions was insufficient to justify a repeat offender specification.  *State v. Lusane,* 11th Dist. Portage No. 2017-P-0013, 2018-Ohio-1775, ¶12-¶17.  For the same reason that the prosecutor's application of the statute was not considered prosecutorial misconduct, the trial court's refusal to dismiss the specification was not an abuse of its discretion.  The trial court did not have the discretion to dismiss the state's charges against Lusane based on his misunderstanding of the law.  His 2005 OVI conviction was not void and the repeat offender specification did not require a prior felony conviction.

Because Lusane has failed to show that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable

determination of the facts in light of the evidence that was presented, I recommend that Lusane's Ground Five claim be dismissed for lack of merit.

### 3.    Cognizability

Warden Bracy also argues that Ground Five is not cognizable.  The court agrees. Lusane's Ground Five claim is based entirely on state law.  See ECF Doc. 34 at 20-22.  As discussed above, a claim that only alleges violations of state law is not cognizable in a federal habeas case, and it must be dismissed on that basis unless the state court's state-law ruling violates a fundamental federal constitutional right.  *See Estelle*, 502 U.S. at 68.  I recommend that Lusane's Ground Five claims be dismissed because they were procedurally defaulted, lack merit and only allege noncognizable violations of state law.

### G.    Ground Six

Lusane's Ground Six claim asserts that the state's failure to provide the 911 emergency call that led to his traffic stop violated his Sixth and Fourteenth Amendment rights and his Confrontation Clause rights.  ECF Doc. 1 at 13.  Warden Bracy argues that this claim is procedurally defaulted and is not cognizable on habeas review.  ECF Doc. 7 at 56-59.

### 1.    Procedural Default

Lusane did not raise his Ground Six claim on direct appeal.  When he raised it later in a post-conviction motion for relief, it was dismissed under the doctrine of *res judicata* because he *could* have, but did not, raise it in on direct appeal.  ECF Doc. 7-1 at 564; *See State v. Perry,* 10 Ohio St.2d 175 (1967).  In refusing to consider this argument in his post-conviction petition, the state court applied a procedural requirement.  As discussed above, Ohio courts regularly apply the doctrine of *res judicata* to foreclose review of claims that could have been or were raised in an earlier proceeding.  And the Sixth Circuit has long held the application of *res judicata* to be

an adequate and independent state ground to foreclose habeas relief in federal court.  See, e.g., *Landrum v. Mitchell*, 625 F.3d 905, 934 (6th Cir. 2010) ("The Ohio Court of Appeals' reliance on res judicata was an adequate and independent state ground to foreclose habeas relief in federal court."); *Fautenberry v. Mitchell*, 515 F.3d 614, 633 (6th Cir. 2008); *Williams v. Bagley,* 380 F.3d 932, 967 (6th Cir. 2004); *Martin v. Mitchell,* 280 F.3d 594, 604 (6th Cir. 2002).  Thus, Lusane's Ground Six claim was procedurally defaulted unless he can show cause and prejudice to excuse his failure to exhaust it in state court or that he was actually innocent.

Lusane acknowledges that he did not raise his Ground Six claim in his direct appeal.  For cause, he argues that this claim was dependent on evidence outside the record.  ECF Doc. 1 at 13.  But, the record shows that this issue was not dependent on outside evidence.  The prosecutor informed Lusane and his counsel *on the record* that the 911 call had been destroyed prior to trial.  ECF Doc. 7-3 at 15-17.  Mr. Horbus, whose wife made the 911 call while he was driving, testified at Lusane's suppression hearing.  ECF Doc. 7-2 at 6-26.  Lusane's counsel cross-examined Mr. Horbus, so Lusane clearly had the opportunity to confront the individual who instigated the 911 call.  *Id.*  And, Lusane could have raised the destruction of the 911 call on direct appeal without the actual recording of the 911 call.  Later when Lusane raised this issue in a post-conviction motion, the trial court held that it was barred by *res judicata.*  ECF Doc. 7-1 at 564.

> This Court further finds that Lusane's second claim for relief, an alleged *Brady* violation is barred by the doctrine of *res judicata.*  A *Brady* violation is discovery of information post-trial that was unknown to the defense, but known to the prosecution.  In the current case, Lusane's alleged *Brady* violation is actually a Criminal Rule 16 claim.
>
> Prior to Lusane's plea and conviction, both Lusane and his counsel were aware of the existence of the destroyed 911 audiotape.  Specifically, this Court addressed the destroyed 911 tape at a hearing on Marcy 28, 2014.  Lusane has also failed to provide any substantive materials to show that the prosecution acted in violation

of Criminal Rule 16; that he suffered any prejudicial effect from the destroyed tape; that the destroyed audiotape would have benefited him in his defense preparation.

Lusane's second claim for relief is also attempting to seek relief for an issue that is within the province of a direct appeal.  As such, this Court lacks jurisdiction to review this claim for relief and is barred by the doctrine of *res judicata.*

ECF Doc. 7-1 at 564.

The Ohio Court of Appeals affirmed the trial court, holding:

{¶ 18} The dispute regarding the 9-1-1 tape was raised before the trial court during an evidentiary hearing, at which time the state gave a full explanation as to why the wrong tape was given to appellant's counsel and why the tape pertaining to his case no longer existed.  The precise issue before the trial court concerned whether appellant's due process rights were violated as a result of the state's failure to ensure the preservation of the audiotape.  Even though the materials attached to appellant's postconviction petition had information concerning the retention schedule of the state highway patrol, this information was identical to the prosecutor's statement during the evidentiary hearing: i.e., tapes of telephone calls were retained for only thirty days.  Thus, appellant's "new" evidence is redundant, and the issue could have been fully considered in the direct appeal from the sentencing judgment.

ECF Doc. 7-1 at 633-634; *State v. Lusane,* 11th Dist. No. 2016-P-0009, 2016-Ohio-5886.

Lusane's argument that he could not have raised this issue on direct appeal lacks merit.  It does not establish cause for failing to raise this issue in his direct appeal.

Because Lusane has not established cause for his procedural default, this Court need not address whether he was actually prejudiced.  *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).  Nonetheless, Lusane cannot show prejudice because there is no merit to his claim that the recording of the 911 call would have changed the outcome of his trial.

Nor has Lusane argued that he is actually innocent or submitted any new evidence to establish his factual innocence.  Because Lusane's Ground Six claim is procedurally defaulted and he has not demonstrated cause and prejudice to excuse the default or argued his actual innocence, I recommend that his Ground Six claim be dismissed as procedurally defaulted.

2.    **Cognizability**

Warden Bracy also argues that Lusane's Ground Six claim does not involve any federal issue and is not cognizable on habeas review.  Lusane attempts to frame his Ground Six claim as a *Brady* violation but, as pointed out by the state court, a *Brady* violation is discovery of information *post-trial* that was unknown to the defense, but known to the prosecution.  To establish a violation of the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [prosecution], either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene,* 527 U.S. 263, 282, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999).  The trial court found that Lusane's argument did not actually state a *Brady* violation, but rather a Crim. R. 16 violation.  I agree that his Ground Six claim does not state a *Brady* violation.  The prosecutor told Lusane that the 911 call had been destroyed *before* trial and there is no indication that any prejudice was caused by its destruction.  ECF Doc. 7-3 at 15-17.  Moreover, Lusane has not shown that the Ohio courts' interpretation of this issue was contrary to *Brady* or involved an unreasonable determination of the facts on the record before it.  Thus, even if not procedurally defaulted, this claim fails for lack of merit.

Lusane's Ground Six claim does not involve any *Brady* violation and was actually based on an alleged violation of Ohio Crim. R. 16.  A claim that only alleges violations of state law is not cognizable in a federal habeas case, and it must be dismissed on that basis unless the state court's state-law ruling violates a fundamental federal constitutional right.  *See Estelle,* 502 U.S. at 68 (1991).  To the extent Lusane claims that the prosecutor failed to provide discovery required by state law or court order, the claim is not a basis for habeas relief.  Any violation of

the state law discovery rules raises an issue not cognizable on habeas review.  *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002).  Lusane's Ground Six claim does not allege any fundamental violation of federal law.  I recommend that Lusane's Ground Six claim be dismissed because it lacks merit and only alleges state law violations not cognizable on habeas review.

## VI.  Recommendation Regarding Certificate of Appealability

### A.  Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'"  *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000).  The statute requires that certificates of appealability specify which issues are appealable.  28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a). In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B.    Analysis

All of Lusane's habeas claims lack merit and/or are noncognizable, as explained above. And all but one of Lusane's claims are procedurally defaulted because he did not raise them in his direct appeal and he has not shown either cause or prejudice to excuse the default. Lusane has not shown any unreasonable applications of federal law or any unreasonable determinations of facts. Habeas relief is not available for the issues identified in his petition. These conclusions would not be debatable among jurists of reason, and I recommend that no certificate of appealability issue in this case.

### VII.    Recommendations

Because all of Lusane's claims were procedurally defaulted, lack merit and/or raise only noncognizable issues, I recommend that the Court DISMISS Lusane's claims and DENY his petition for writ of habeas corpus under 28 U.S.C. § 2254. I further recommend that he not be granted a certificate of appealability.

Dated: February 27, 2020

Thomas M. Parker
United States Magistrate Judge

_____

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after being served with a copy of this document.  Failure to file
objections within the specified time may waive the right to appeal the District Court's order.  See
*U.S. v. Walters,* 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985),
reh'g denied, 474 U.S. 1111 (1986).