# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **MATTHEW LUSANE,** | **CASE NO. 5:18-CV-00632** |
| Petitioner, | **JUDGE PAMELA A. BARKER** |
| -vs- | |
| | **MAGISTRATE JUDGE THOMAS M. PARKER** |
| **WARDEN CHARMAINE BRACY,** | |
| Respondent. | **MEMORANDUM OF OPINION AND ORDER** |

This matter is before the Court upon the Report & Recommendation ("R&R") of Magistrate Judge Thomas M. Parker (Doc. No. 60), which recommends denying the Petition for Writ of Habeas Corpus (Doc. No. 1) of Petitioner Matthew Lusane ("Lusane"). Lusane has filed Objections to the R&R. (Doc. No. 66.) For the following reasons, Lusane's Objections (Doc. No. 66) are OVERRULED, the Magistrate Judge's Report & Recommendation (Doc. No. 60) is ADOPTED as set forth herein, and the Petition (Doc. No. 1) is DENIED.

## I. Background

### a. Factual Background

The Court of Common Pleas of Portage County, Ohio summarized the facts underlying Lusane's state court conviction as follows:

> That on or about July 14, 2013 Craig Horbus, an Ohio Attorney, was traveling with his wife Marci from Canton, Ohio heading towards Portage County, Ohio. The witness testified that they had just merged form the central interchange Route 77 North heading on to Route 76 East, towards Portage County. It was after seven in the evening.
>
> After Mr. and Mrs. Horbus merged onto Route 76 East, they noticed a blue minivan in front of them with a bumper hanging noticeably off the front passenger side of the vehicle. It seemed to be flapping in the wind as the driver drove down Route 76.

The witness followed the blue van east on Route 76 and noticed that it swerved off the road, towards the concrete barriers that separate the highway.  Mr. Horbus then noticed the vehicle swerved back into the passing lane, kicking up debris in the process.

Horbus and his wife observed several other lane violations, and near misses with other vehicles due to the bumper hanging off the blue van and the Defendant's erratic driving.  They also noticed the driver of the van over correcting and driving too close to other vehicles.

The witness testified that they followed the blue minivan for a few more miles on Route 76 and saw a few incidents where the Defendant's bumper almost hit other vehicles beside him.

When the Horbus' entered Portage County, from Summit, around Brimfield Township, they noticed the *6-7-7 impaired driver sign, and decided to call and report the blue minivan.

Marci Horbus called the number on her cell phone and explained to the dispatcher that the Blue minivan's driver was driving dangerous and erratic.

In his testimony, Mr. Horbus indicated that he had never called the impaired driver number before, nor has his wife, but they felt the instant matter warranted a call because the driving was so dangerous.

Mrs. Horbus identified the vehicle to the dispatcher and she and her husband, stayed behind the blue minivan until it was pulled over by the State Trooper.  The dispatcher stayed on the phone with Mrs. Horbus until the vehicle was pulled over and identified by the them and relayed to the Trooper.

Shortly after the Route 43 Exit, a Trooper appeared in a marked vehicle and pulled behind the Defendant's vehicle.  He proceeded to follow the Defendant for a short distance, activated his overhead lights, and pulled the Defendant over before the Route 44 Exit.  Again, the witnesses were asked if the Trooper had pulled over the vehicle they had been following since Summit County, and the advised that the right vehicle was pulled over by the Trooper.

Later Mr. Horbus did go to the State Highway Patrol headquarters, and made a formal, written/typed statement.

Trooper Krug, who was on duty the date in question and was wearing an official O.S.P. uniform, driving a properly marked vehicle.  He testified at the hearing as to the probable cause for the stop and the investigation leading up to the arrest of the Defendant.

2

The Trooper testified that he has been a trooper for eight years, and that he is certified as an Officer in the State of Ohio.  Krug testified that he has specialized training in observing and recognizing people under the influence of alcohol, and that he successfully completed the A.D.A.P. training.

The Trooper testified that on July 14, 2013, he came into contact with Matthew Lusane, after his post received a R.E.D.D.I report, or *6-7-7 call regarding a dangerous driver.  The dispatcher relayed the information regarding the description of the vehicle and its location to the Trooper.  Krug was near 44 and Route 5, so he went to the area described by dispatch.  He sat in the crossover area near the Route 44 Exit on Route 76 and waited for the vehicle.

When the vehicle approached the Trooper, the dispatcher relayed from Mrs. Horbus that the vehicle was approaching.  The Trooper identified the vehicle and pulled out behind it and followed it a short distance.

The Trooper observed the Defendant's car switch from the right lane to the left lane. He saw the Defendant's vehicle travel off the left side of the roadway over to the yellow solid line, near the grass and then corrected.

After seeing the lane violation, and based on the R.E.D.D.I call, the Trooper activated his overhead lights and pulled the Defendant over.

The Trooper approached the vehicle on the passenger side, and engaged the Defendant in a brief conversation.  Krug noticed that there was a strong odor of alcohol coming from the inside of Lusane's vehicle, so he asked him to step out of the van.

Trooper Krug continued a conversation with the Defendant and determined that the smell of alcohol was coming from the Defendant's person.  Lusane was then asked to perform three Field Sobriety Tests, to which he did not comply and cooperate.

(Doc. No. 7-1 at 49-52.)[1]

_____

[1] Quotations throughout the opinion are reproduced as in the original.

3

### b.  Procedural History

#### i.  State Trial Court Proceedings

On July 18, 2013, a Portage County Grand Jury indicted Lusane on (1) two counts of Operating a Vehicle Under the Influence of Alcohol or Drugs ("OVI") in violation of Ohio Rev. Code §§ 4511.19(A)(1)(a) and (h), 4511.19(G)(1)(d), 2929.13(G)(2), and 2941.1413 (Counts 1 and 2); and (2) one count of Driving Under Suspension in violation of Ohio Rev. Code § 4510.11(A) (Count 3). (*Id.* at 8-13.)  Counts 1 and 2 carried a repeat offender specification and enhancement making those charges fourth degree felonies because Lusane had been convicted of five or more OVI offenses in the past twenty years.  (*Id.* at 8-11.)

Lusane filed several pretrial motions, including a motion to dismiss the indictment that challenged his underlying OVI conviction in a 2005 case captioned *State v. Lusane*, 2005 TRC 11364 (Portage Cty. Municipal Court).  (*Id.* at 16-18.)  The trial court denied the motion after a hearing.  (*Id.* at 59-61.)  In a Judgment Entry issued on May 6, 2014, the state trial court held: "From the testimony and evidence, it is clear that the Defendant was charged and convicted of O.V.I. violations; starting as a juvenile in July of 1995, and then as an adult in May 2000, July 2005, December 6, 2005, December 27, 2005, and in August 2012.  In each of these O.V.I. cases, the Defendant was represented by counsel and entered into a plea knowingly, intelligently, and willingly."  (*Id.* at 61.)[2]

A jury trial commenced on August 7, 2014, and Lusane was found guilty on all counts in the indictment, including the repeat OVI offender specifications.  (*Id.* at 245-46.)  On September 3, 2014, the trial court merged the two OVI convictions and specifications and sentenced Lusane to two years

---

[2] Lusane argues, and Respondent does not appear to dispute, that Lusane's juvenile conviction could not be used to enhance his OVI charge, and, therefore, the State was required to prove all five of his prior convictions as an adult.  (*See* Doc. No. 43 at 3.)

for the OVI conviction, four consecutive years for the specification, and 180 concurrent days for driving under suspension, for an aggregate prison term of 6 years.  (*Id.* at 253.)

## ii.  Direct Appeal

On September 26, 2014, Lusane, represented by new counsel, filed a notice of appeal to the Court of Appeals for the Eleventh District of Ohio ("state appellate court" or "Ohio Court of Appeals").  (*Id.* at 257.)  In his appellate brief, Lusane asserted two assignments of error:

1. The trial court erred in denying appellant's motion to dismiss the felony indictment (T.D. 97) where appellant established a prima facie case that one of the cases used to enhance his current charge to a felony was constitutionally infirm as the trial court in that case failed to hold a plea hearing where appellant waived his trial rights and entered a guilty plea.

2. The trial court erred when it enhanced appellant's, Matthew Lusane's, sentence pursuant to Ohio Revised Code 4511.19(G)(1)(d)(i) (T.D. 170) because R.C. 4511.19 contains two different penalties for persons who have committed six offenses within 20 years, with no difference in proof required to trigger the greater penalties, R.C. 4511.19 violates due process and equal protection.

(*Id.* at 265-91.)  On January 25, 2016, the Ohio Court of Appeals overruled Lusane's assignments of error and affirmed his conviction and sentence.  (*Id.* at 308-17.)

On February 5, 2016, Lusane moved to certify a conflict on the constitutionality of the repeat OVI offender specification.  (*Id.* at 319-23.)  On March 11, 2016, the Ohio Court of Appeals certified the following question of law:

Whether the repeat OVI offender specification in R.C. 2941.1413(A) facially violates a defendant's right to equal protection, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution, because the specification is based upon the identical evidence required to prove a fourth-degree felony under R.C. 4511.19(G)(1)(d)?

(*Id.* at 324-25.)

On March 10, 2016, Lusane, through counsel, filed a notice of appeal with the Ohio Supreme Court.  (*Id.* at 326-28.)  In his memorandum in support of jurisdiction, he raised the following propositions of law:

1. The repeat-OVI-offender specification in R.C. 2941.1413(A) facially violates a defendant's right to equal protection, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution, because the specification is based solely upon the same information required to establish a fourth-degree felony under R.C. 4511.19(G)(1)(d).

2. The use of a prior OVI conviction to enhance a subsequent OVI charge where the defendant was never brought before a judge for a plea hearing before the prior conviction was entered in the previous case violates a defendant's right to Due Process, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

(*Id.* at 329-47.)  On June 15, 2016, the Ohio Supreme Court declined to accept jurisdiction.  (*Id.* at 349.)

### iii.  Post-Conviction Petition

On June 8, 2015, Lusane filed a *pro se* petition to vacate his conviction and sentence.  (*Id.* at 350-61.)  In his petition for post-conviction relief, Lusane raised the following claims:

1. In raising the degree of the OVI charge to a felony was unconstitutional where the State relied upon the Kent OVI case no. 2005-TRC-4525, that was the result of a no contest plea which is prohibited by Evidence Rule 410(A)(2) and Criminal Rule 11(B)(2).  The petitioner's guaranteed rights to Due Process and Equal Protection of Law under the U.S. Constitution and the Bill of Rights were violated.

2. The government failed to disclose the recorded emergency call that was specifically requested and ordered; denying the defendant/[now] petitioner access to that evidence.  The petitioner's Sixth and Fourteenth Amendment rights under the U.S. Constitution may have been violated; depriving him the fundamental rights to a fair trial and due process.  The non-disclosure of the evidence might have violated *Brady*.

(*Id.* at 354, 357.)

6

On August 28, 2015, Lusane filed a supplemental brief adding the following claim to his petition:

> Petitioner was denied his Sixth Amendment right to effective assistance of counsel. Trial counsel was ineffective, failing to present relevant evidence to make a prima facie case in the hearing to dismiss the felony OVI charge.

(*Id.* at 400-03.)

On October 20, 2015, Lusane filed a second supplemental brief adding the following claim to his petition:

> The trial court failed to sign the judgment of conviction in Case No. 2013 CR 0443. Thus, failing to comply with a fatal requirement pursuant to Ohio Criminal Rule of Procedure 32(C) renders the petitioner's conviction and sentence void.

(*Id.* at 445-50.)

On January 21, 2016, the trial court dismissed Lusane's post-conviction petition because all of his claims were barred by *res judicata*.  (*Id.* at 561-65.)  The court also found that some of the claims were meritless.  (*Id.*)

On January 28, 2016, Lusane filed a *pro se* appeal to the Ohio Court of Appeals.  (*Id.* at 567.) Lusane asserted three assignments of error:

1. Trial court erred by improperly using res judicata as the basis for dismissing appellant's petition before the decision of his first appeal of right in the OVI case.

2. The trial court erred by issuing insufficient findings and conclusions of law that make no reference to the specific portion of the file or record supporting the court's findings and that contradict the allegations in the petition, affidavits and evidence dehors the record.

3. The trial court erred by not holding an evidentiary hearing pursuant to Ohio Rev. Code § 2953.21(E) where the evidence dehors the record established substantial grounds supporting appellant's claim that he was denied effective assistance of counsel in the OVI case.

7

(*Id.* at 581-600.)  On September 19, 2016, the Ohio Court of Appeals affirmed the judgment of the trial court.  (*Id.* at 629-37.)

On November 3, 2016, Lusane filed a *pro se* notice of appeal with the Ohio Supreme Court. (*Id.* at 639-40.)  His memorandum in support of jurisdiction asserted three propositions of law:

1. The dismissal of a petition pursuant to R.C. 2953.21(C) based on *res judicata* while a defendant's first appeal of right is pending violates a defendant's right to Due Process, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

2. The finding of fact and conclusions of law that do not adhere to R.C. 2953.21(C) by making reference to the specific portions of the files or record supporting the court's findings and that contradict the allegations in the petition, affidavits and any supporting evidence violates a defendant's right to Due Process, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

3. The denial of an evidentiary hearing after a defendant has provided supporting documentary evidence establishing substantial grounds for relief under R.C. 2953.21(E) violates defendant's right to Due Process, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

(*Id.* at 641-55.)  On April 19, 2017, the Ohio Supreme Court declined to accept jurisdiction.  (*Id.* at 673.)

### iv.  Motion to Vacate Conviction and Dismiss Indictment

On March 7, 2017, Lusane filed a *pro se* motion to vacate conviction and dismiss the indictment.  (*Id.* at 674-76.)  Lusane argued that there was no evidence of a prior felony OVI conviction, as all of his previous OVI convictions were misdemeanors, and that the repeat OVI offender specification therefore should not have been applied.  (*Id.*)  On March 10, 2017, the trial court denied Lusane's motion.  (*Id.* at 677.)

On April 11, 2017, Lusane filed a *pro se* notice of appeal with the Ohio Court of Appeals.

(*Id.* at 678.)  His appellate brief raised the following assignments of error:

1. The prosecuting attorney failed in violation of ethical rules of professional conduct 3.5, 8.4 and Criminal Rule 16, to disclose exculpatory evidence to the jury that appellant did not have a prior felony OVI conviction which is required in charging the repeat OVI offender specification under R.C. 2941.1413.

2. The trial court erred by not dismissing the indictment pursuant to Crim R. 48(B) where appellant did not have a prior felony OVI conviction to apply the repeat felony specification making the judgment void.

3. The trial court erred by granting no reason for denying appellant's motion to vacate the conviction and dismiss the indictment.

(*Id.* at 688-700.)  On May 7, 2018, the Ohio Court of Appeals affirmed the judgment of the trial court.

(*Id.* at 715-21.)

On June 11, 2018, Lusane filed a *pro se* notice of appeal with the Ohio Supreme Court.  (Doc.

No. 8-1 at 1-2.)  His memorandum in support of jurisdiction raised three propositions of law:

1. The prosecuting attorney(s) failed in violation of ethical rules of professional conduct 3.5, 8.4 and Criminal Rule 16, to disclose exculpatory evidence to the jury that appellant did not have a prior felony OVI conviction which is required in charging the repeat OVI offender specification under R.C. 2941.1413.

2. The trial court erred by not dismissing the indictment pursuant to Crim. R. 48(B) where appellant did not have a prior felony OVI conviction to apply the repeat felony OVI specification making the judgment void.

3. The trial court erred by giving no reason for denying appellant's motion to vacate the conviction and dismiss the indictment.

(*Id.* at 3-21.)  On August 1, 2018, the Ohio Supreme Court declined to accept jurisdiction.  (Doc. No.

11-1.)

### v.  Challenges to Prior Convictions

While Lusane's current Petition for habeas relief has been pending, he also has continued to attack several of the underlying OVI convictions that supported the repeat offender specification for his felony OVI conviction in 2014 with filings in the original court of conviction for those underlying OVIs.

For instance, on December 28, 2018, Lusane filed a Motion to Revise Judgment of Conviction with respect to his prior, predicate OVI conviction from 2005 in the Portage County Municipal Court, Ravenna Division ("2005 Ravenna OVI conviction").  *See State v. Lusane*, Portage County Municipal Court, Case No. 2005 TRC 11364 (docket).  The municipal court denied Lusane's motion on February 19, 2019, and he timely appealed.  (*Id.*)  On September 3, 2019, the state appellate court found that the municipal court violated Ohio Crim. R. 32(C) by failing to issue a single entry setting forth both the conviction and sentence, and reversed and remanded.  *State v. Lusane*, No. 2019-P-0027, 2019 WL 4166777, at *1 (Ohio Ct. App. 11th Dist. Sept. 3, 2019) ("The trial court noted on the case file jacket that appellant plead guilty to operating a vehicle while intoxicated. . . . Separately, in a judgment entry, the trial court imposed a thirty-day jail term, suspended appellant's driver's license for two years, and fined him $550 and court costs.").  On remand, the municipal court issued a corrected judgment entry setting forth both the conviction and sentence in a single entry in compliance with Ohio Crim. R. 32(C).  (Doc. No. 58-1.)  On December 19, 2019, Lusane appealed from the corrected judgment entry.  *See State v. Lusane*, Portage County Municipal Court, Case No. 2005 TRC 11364 (docket).  Subsequently, the Ohio Court of Appeals affirmed the judgment against him, and the Ohio Supreme Court declined to accept jurisdiction of Lusane's appeal of that decision.

10

*See State v. Lusane*, No. 2019-P-0115, 2020 WL 4747530 (Ohio Ct. App. 11th Dist. Aug. 17, 2020);

*State v. Lusane*, 160 Ohio St.3d 1498 (2020).

      In February 2019, Lusane also filed a Motion to Revise Judgment of Conviction with respect

to his prior, predicate OVI conviction from 2000 in the Portage County Municipal Court, Ravenna

Division ("2000 Ravenna OVI conviction").  *See State v. Lusane*, Portage County Municipal Court,

Case No. 2000 TRC 0510 (docket).  The municipal court denied the motion, and Lusane appealed in

May 2019.  *Id.*  On appeal, the Ohio Court of Appeals again held that the municipal court had violated

Ohio Crim. R. 32(C) by failing to issue a single entry setting forth both the conviction and sentence.

*State v. Lusane*, No. 2019-P-0065, 2020 WL 1000054, at *1 (Ohio Ct. App. 11th Dist. Mar. 2, 2020).

While noting that there were separate entries showing Lusane's guilty plea and sentence, there was

no singular entry that stated both the fact of conviction and the sentence.  *Id.*  Thus, the court

"reverse[d] and remand[ed] for the lower court to issue a proper judgment which contains both the

fact of conviction and the sentence in a single entry."  *Id.*  After the municipal court filed a proper

entry, Lusane once again appealed.  *See State v. Lusane*, Portage Cty. Municipal Court, Case No.

2000 TRC 0510 (docket).  Lusane's appeal remains pending as of the date of this Memorandum

Opinion & Order.

### vi.  Federal Habeas Petition

      On March 19, 2018, Lusane filed a *pro se* Petition for Writ of Habeas Corpus in this Court,

raising six grounds for relief:

> **GROUND ONE:**  The trial court erred in denying appellant's motion to dismiss the
> felony indictment where appellant established a prima facie case that one of the cases
> used to enhance his current charge to a felony was constitutionally infirm (hereinafter
> "ghost conviction") violating his 14th Amendment rights under the U.S. Constitution.

11

**GROUND TWO:**  Trial counsel was deficient, not reasonably competent, and counsel's deficiencies prejudiced petitioner by failing to investigate the case, subpoena witnesses and he withheld exculpatory evidence provided by the state to use at trial, violating petitioner's 6th Amendment right to counsel under the U.S. Constitution.

**GROUND THREE:**  The felony OVI conviction is null and void because the trial court judge failed to sign the judgment of conviction as required by Criminal Rules of Procedure 32(C) depriving petitioner of his 14th Amendment rights under the U.S. Constitution.

**GROUND FOUR:**  Cumulative prosecutorial misconduct violated petitioner's 5th, 6th and 14th Amendments under the U.S. Constitution.

> I.     Prosecutor used a prior misdemeanor OVI conviction that is constitutionally infirm to enhance the misdemeanor to felony status.

> II.     Prosecutor added a Felony Repeat OVI Offender Specification to the indictment where Petitioner had not previously been convicted of Felony OVI again the prosecutor misled grand jury to obtain the specification with constitutionally infirm prior misdemeanor OVI's.

**GROUND FIVE:**  The trial court erred by not dismissing the indictment pursuant to Crim. R. 48(B) where appellant did not have a prior felony OVI conviction to apply the repeat felony OVI specification making the judgment void.

**GROUND SIX:**  The state's failure to provide the 911/*677 emergency call deprived the petitioner of his 6th & 14th Amendment rights and his confrontation rights under the U.S. Constitution.

(Doc. No. 1 at 5-13.)  Respondent Warden Charmaine Bracy ("Respondent") filed an Answer/Return of Writ on July 17, 2018, and Lusane filed a Reply to Respondent's Return of Writ on January 28, 2019.  (Doc. Nos. 7, 34.)[3]

On February 27, 2020, the Magistrate Judge issued an R&R recommending that the Petition be denied. (Doc. No. 60.)  The Magistrate Judge concluded that all of Lusane's claims were either

---

[3] Throughout the case, Lusane also filed a number of motions, such as multiple motions to stay, to supplement the record, and for immediate release on bond, that have been ruled upon.

12

procedurally defaulted, noncognizable, and/or lacking in merit.  (*Id.*)  After receiving several extensions of time in which to file objections to the R&R, Lusane filed Objections to the R&R on June 16, 2020.  (Doc. No. 66.)  In his Objections, Lusane objects to the Magistrate Judge's recommended holdings only with respect to Grounds One and Two of his Petition.  (*See id.*)

## II.  Standard of Review

Parties must file any objections to a report and recommendation within fourteen days of service. Fed. R. Civ. P. 72(b)(2).  Failure to object within this time waives a party's right to appeal the district court's judgment.  *See Thomas v. Arn*, 474 U.S. 140, 145 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).

When a petitioner objects to a magistrate judge's resolution of a dispositive matter, the district court reviews those objections *de novo*.  Fed. R. Civ. P. 72(b)(3).  Specifically, a district judge:

> must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*  "A party who files objections to a magistrate [judge]'s report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court 'with the opportunity to consider the specific contentions of the parties and to correct any errors immediately.'" *Jones v. Moore*, No. 3:04CV7584, 2006 WL 903199, at *7 (N.D. Ohio Apr. 7, 2006) (quoting *Walters*, 638 F.2d at 949-50).  An objection "that merely restates the arguments previously presented" or "does nothing more than state a disagreement with a magistrate's recommendation" is not sufficient.  *Id.*

When a party fails to raise a specific objection to a finding of a magistrate judge on a dispositive matter, "the court need only satisfy itself that there is no clear error on the face of the record in order

to accept the recommendation." Fed. R. 72(b)(3), Advisory Committee Notes; *see also Thomas*, 474 U.S. at 150 (stating that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").

### III. Analysis

#### a. Ground One

In Ground One of his Petition, Lusane asserts that "[t]he trial court erred in denying appellant's motion to dismiss the felony indictment where appellant established a prima facie case that one of the cases used to enhance his current charge to a felony was constitutionally infirm." (Doc. No. 1 at 5.) According to Lusane, his 2005 Ravenna OVI conviction was constitutionally infirm because no hearing took place where he was present in open court with counsel to enter a plea or to participate in a trial. (Doc. No. 34 at 10.)

The Magistrate Judge concluded that Ground One failed on the merits, as the Ohio Court of Appeals decision rejecting Lusane's argument in this regard was not contrary to, or an unreasonable application of, clearly established federal law. (Doc. No. 60 at 19-22.) Relying in part on *Custis v. United States*, 511 U.S. 485 (1994), the Ohio Court of Appeals had held that a defendant may only collaterally attack a prior conviction on the basis that the defendant was convicted without the assistance of counsel. *State v. Lusane*, 58 N.E.3d 416, 418-20 (Ohio Ct. App. 11th Dist. 2016). Because Lusane was represented by counsel during the case resulting in his prior conviction and he only alleged that his guilty plea was invalid due to a lack of a hearing in violation of Ohio Crim. R. 11(C), the Ohio Court of Appeals concluded he had not stated proper grounds for collaterally attacking his prior OVI conviction. *Id.* Alternatively, the Magistrate Judge also found that even if

14

Lusane was permitted to challenge the validity of his 2005 Ravenna OVI conviction, his challenge would fail.  (Doc. No. 60 at 22-25.)

Lusane's objections to the Magistrate Judge's conclusions with respect to Ground One appear to be two-fold.  First, Lusane asserts that the Ohio Court of Appeals' reliance on *Custis* in denying his direct appeal was misplaced, as his case is distinguishable for a number of reasons.  (Doc. No. 66 at 2-3.)  Second, within his objections to Ground One, Lusane appears to raise a new ground for relief by arguing that his felony OVI conviction was based on insufficient evidence in violation of the Due Process Clause of the Fourteenth Amendment.  (*Id.* at 3-4.)  Relying on the two Ohio Court of Appeals decisions that held that the journal entries from his 2000 and 2005 Ravenna OVI convictions did not comply with Ohio Crim. R. 32(C), Lusane appears to argue that the journal entries offered by the State to prove his prior convictions were invalid and therefore could not support the repeat offender specification for his felony OVI conviction.  (*Id.*)  Upon review of Lusane's Objections, the Court finds them unpersuasive.

First, the Court agrees with the Magistrate Judge that Ground One as presented in Lusane's Petition fails on the merits, as the state appellate court's ruling precluding Lusane from collaterally attacking his 2005 Ravenna OVI conviction was not contrary to, or an unreasonable application of, clearly established federal law.  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotations omitted).  Pursuant to AEDPA, habeas corpus relief is unavailable with respect to any claim adjudicated on the merits in state court unless the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[F]or a state court's decision to be 'contrary to' clearly established Supreme Court precedent, it must 'arrive[ ] at a conclusion opposite to that reached by [the Supreme Court] on a question of law[,]' or it must face a set of 'facts that are materially indistinguishable from a relevant Supreme Court precedent and' still arrive at an opposite result." *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

This is distinct from an "unreasonable application of" Supreme Court precedent, which occurs "when the state court correctly identifies the governing legal principle in the case, yet it unreasonably applies that principle to the facts of the defendant's case." *Id.*  Under this standard, federal courts may not overturn a state court's decision simply because they believe that the state court applied Supreme Court precedent incorrectly.  *Id.*  "Instead, the state court's application of Supreme Court precedent must also be objectively unreasonable." *Id.*  This means "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

In addition, the Supreme Court has made clear that the phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," as used in 28 U.S.C. § 2254(d),

16

"refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

In this case, the Ohio Court of Appeals rejected Lusane's argument on direct appeal that one of his underlying convictions was constitutionally infirm and found that he had failed to raise sufficient grounds to collaterally attack his 2005 Ravenna OVI conviction:

> {¶ 10} Under his first assignment, appellant maintains that the trial court erred in concluding that the state could employ his prior conviction in Portage County Municipal Court Case No. 2005 TCR 11364 to enhance the OVI charges in the underlying case to fourth-degree felonies. He submits that this specific conviction must be declared invalid because there is no evidence that the municipal court conducted the required Crim.R. 11(C) hearing prior to accepting his guilty plea. According to appellant, the fact that no plea hearing took place resulted in a jurisdictional error rendering the prior conviction unenforceable for enhancement purposes.

> {¶ 11} In asserting this argument before the trial court and this court, appellant is attempting to collaterally attack the validity of the municipal court conviction. In relation to this type of challenge to a criminal conviction, the Supreme Court of Ohio has noted:

> {¶ 12} "Generally, a past conviction cannot be attacked in a subsequent case. However, there is a limited right to collaterally attack a conviction when the state proposes to use the past conviction to enhance the penalty of a later criminal offense. A conviction obtained against a defendant who is without counsel, or its corollary, an uncounseled conviction obtained without a valid waiver of the right to counsel, has been recognized as constitutionally infirm. *State v. Brandon* (1989), 45 Ohio St.3d 85, 86, 543 N.E.2d 501; *Nichols v. United States* (1994), 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745." *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, ¶ 9.

> {¶ 13} Appellant does not contend the municipal court conviction was uncounseled. Instead, he asserts that the prior conviction is constitutionally infirm due to the lack of a Crim.R. 11(C) plea hearing. But, in reviewing the relevant case law, this court has stated that a prior conviction is only subject to collateral attack for one reason. In *State v. Nadock*, 11th Dist. Lake No. 2009–L–042, 2010-Ohio-1161, 2010 WL 1058356, the defendant argued that his prior convictions for domestic violence could not be used to enhance the degree of the latest charge because, in the prior cases, he was never informed of the effect of the convictions on future charges and was not provided a full explanation of the factual bases for the prior offenses. In holding that the earlier

17

convictions could not be collaterally attacked on those grounds, the *Nadock* court first discussed the initial burden the defendant must carry to show a "constitutional infirmity" in the prior convictions.  *Id.* at ¶ 9.  In regard to the nature of the constitutional infirmity, our opinion then stated:

{¶ 14} "With this procedure in mind, however, the only constitutional infirmity that a criminal defendant may allege to collaterally challenge a prior penalty-enhancing conviction is the denial of the fundamental right to be represented by counsel.  *State v. Dowhan*, 11th Dist. No. 08–L–064, 2009-Ohio-684 [2009 WL 368481], at ¶ 12, citing *State v. Culberson*, 142 Ohio App.3d 656, 662–663, 2001-Ohio-3261, 756 N.E.2d 734; see, also, *Brandon*, [45 Ohio St.3d] at 86 [543 N.E.2d 501]; *Custis v. United States* (1994), 511 U.S. 485, 496, 114 S.Ct. 1732, 128 L.Ed.2d 517; (wherein the Supreme Court expressly refused to extend the right to attack collaterally prior convictions used for sentencing enhancement beyond the right to have appointed counsel.  *Id.* at 49 [114 S.Ct. 1732] ).  Such an infirmity ' " * * * consists of a conviction obtained without the assistance of counsel, or its corollary, an invalid waiver of the right to counsel." ' [*State v. Armbruster*, 3d Dist. No. 9–03–15, 2004-Ohio-289, 2004 WL 112640], at ¶ 7, quoting *Culberson*, supra."  *Id.* at ¶ 21.  *See also, State v. Lewis*, 11th Dist. Lake No. 2009–L138, 2010-Ohio-4288, 2010 WL 3528923.

{¶ 15} The *Nadock* court relied upon the United States Supreme Court's decision in *Custis*, 511 U.S. at 496, 114 S.Ct. 1732.  *Custis* involved a situation in which a defendant's three prior felony convictions had the effect under federal law of increasing the length of the prison term which could be imposed for illegal possession of a firearm.  The *Custis* defendant sought to collaterally attack the prior convictions on three bases: " * * * the denial of the effective assistance of counsel, that his guilty plea was not knowing and intelligent, and that he had not been adequately advised of his rights in opting for a 'stipulated facts' trial."  *Id.*  The Supreme Court declined to increase the number of acceptable grounds for collaterally attacking a prior conviction, holding that none of the three reasons cited by the defendant rose "to the level of a jurisdictional defect resulting from the failure to appoint counsel" for an indigent defendant.  *Id.*  The *Custis* court noted that a violation of the right to appointed counsel was considered "a unique constitutional defect."  *Id.*

{¶ 16} Focusing upon the use of the phrase "jurisdictional defect" in the *Custis* opinion, appellant postulates that, even though the *Custis* court rejected the three cited constitutional violations as plausible bases for collateral attack, it left open the possibility that other constitutional violations could be grounds for collateral attack so long as the violations deprive a trial court of jurisdiction over the prior case.  Building upon this, he claims that the failure to conduct the Crim.R. 11(C) plea hearing is a jurisdictional defect because his basic due process rights were violated.  According to appellant, without a plea hearing, he was denied his fundamental right to be heard.

18

{¶ 17} Yet, in raising this argument, appellant has not asserted that it was never his intention to plead guilty in the municipal court OVI case, and that he would have stated such to the municipal court if the plea hearing had been held.  To this extent, his allegation as to the lack of a plea hearing does not raise a due process concern, but only pertains to the question of whether he entered a valid guilty plea.  He is merely arguing that the municipal court did not follow the required procedure for determining whether his guilty plea was made knowingly, intelligently and voluntarily.

{¶ 18} In applying *Custis*, Ohio courts have consistently concluded that a prior conviction cannot be collaterally attacked on the grounds that the guilty plea was invalid due to lack of compliance with Crim.R. 11(C).  *See Nadock*, 2010-Ohio-1161, 2010 WL 1058356, at ¶ 22; *State v. Drager*, 2d Dist. Montgomery No. 26067, 2014-Ohio-3056, 2014 WL 3407874; *State v. Mikolajczyk*, 8th Dist. Cuyahoga No. 93085, 2010-Ohio-75, 2010 WL 125998; *State v. Endsley*, 7th Dist. Columbiana No. 04–CO–46, 2005-Ohio-5631, 2005 WL 2715458.

{¶ 19} There is no dispute that appellant was represented by counsel during the disputed municipal court case.  As a result, appellant could not state proper grounds for collaterally attacking this prior OVI conviction.  Moreover, since he did not dispute that he had four other prior convictions for OVI, the fourth-degree felony OVI charges were proper and his first assignment of error is without merit.

*Lusane*, 58 N.E.3d at 418-20.

In his Objections, Lusane asserts that the Ohio Court of Appeals erred in its holding and argues that *Custis* is distinguishable from his case because (1) the five prior OVI convictions in his case were elements of the offense, not merely used to enhance sentencing as in *Custis*; (2) his prior convictions were misdemeanors, while the defendant's prior convictions in *Custis* were felonies; and (3) the State offered journal entries in support of two of his prior convictions that did not comply with Ohio Crim R. 32(C) and were therefore not final judgment entries, which was not the case in *Custis*. (Doc. No. 60 at 2-3.)  However, Lusane has not shown that these distinguishing features render the Ohio Court of Appeals' decision so unreasonable that he is entitled to relief under AEDPA's deferential standard.  In *Custis*, the Supreme Court explicitly declined "to extend the right to attack collaterally prior convictions used for sentence enhancement beyond the right to have appointed

counsel established in *Gideon*."  511 U.S. at 496.  It is undisputed that Lusane was represented by counsel in each of his prior OVI cases.  (Doc. No. 7-1 at 59-61; Doc. No. 7-4 at 48-49.)  Accordingly, it was not an unreasonable application of *Custis* to bar his collateral attack.  Nor has Lusane cited any other Supreme Court case showing that the Ohio Court of Appeals' decision was contrary to, or an unreasonable application of, federal law.  Accordingly, the Court agrees with the Magistrate Judge that Ground One as presented in the Petition is meritless.

Next, as noted above, in his Objections, Lusane also appears to argue that because the journal entries from his 2000 and 2005 Ravenna OVI convictions did not comply with Ohio Crim. R. 32(C)'s requirements for final judgment entries, those journal entries were not sufficient evidence to support the repeat offender specification for his felony OVI conviction.  (Doc. No. 66 at 3-4.)  This argument, that he was convicted based on insufficient evidence of his prior convictions, was not presented in Lusane's Petition.  To wit, in Ground One, Lusane asserted that one of his past convictions was constitutionally infirm, but he did not argue that the State did not submit sufficient evidence of the fact of any of his past convictions.  (*See* Doc. No. 1 at 5.)  Lusane did make similar insufficiency of the evidence arguments in his Reply to Respondent's Return of Writ and in some of his motions to supplement the record, but never amended his Petition to include such a claim.  (*See* Doc. No. 34 at 10-11; Doc. Nos. 47, 56.)

"A habeas petitioner cannot raise new claims or arguments in an objection that were not presented to the Magistrate Judge."  *Cody v. Sheldon*, No. 1:18CV1787, 2020 WL 1060031, at *8 (N.D. Ohio Mar. 5, 2020); *Biggs v. Coleman*, No. 5:11CV00292, 2014 WL 185893, at *5 (N.D. Ohio Jan. 15, 2014) ("Objections Four and Five assert new grounds for relief that were not set forth in the habeas petition, and, consequently, the magistrate judge had no opportunity to address them.  Because

these new grounds for relief are not properly before the Court, they are overruled.").  Because Lusane has attempted to raise a new claim in his Objections, it must be denied.

Even if the Court were to consider Lusane's new claim, however, it would be denied as procedurally defaulted.  Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).  "The procedural default rule is related to the statutory requirement that a habeas petitioner must exhaust any available state-court remedies before bringing a federal petition."  *Lovins v. Parker*, 712 F.3d 283, 294 (6th Cir. 2013); *see* 28 U.S.C. § 2254(b), (c).  "A claim may become procedurally defaulted in two ways."  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

"First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court."  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  "If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted."  *Williams*, 460 F.3d at 806.  As articulated by the Sixth Circuit, "[u]nder the independent and adequate state ground doctrine, a federal habeas claim is procedurally defaulted when: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default."  *Lovins*, 712 F.3d at 296 (quoting *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc)).

21

"Second, a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999)). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* In other words, "a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule." *Lovins*, 712 F.3d at 295. "A claim is adequately raised on direct appeal if it was 'fairly presented' to the state court." *Williams*, 460 F.3d at 806.

"In Ohio, a petitioner is not entitled to raise claims in postconviction proceedings where those claims could have been raised on direct appeal." *Griffin v. Lazaroff*, No. 1:17CV917, 2020 WL 1452302, at *10 (N.D. Ohio Mar. 25, 2020); *accord Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("Under Ohio law, the failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under the State's doctrine of res judicata."). "Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted." *Griffin*, 2020 WL 1452302, at *10.

Here, Lusane never raised an insufficiency of the evidence claim in his direct appeal or at any point in his state court proceedings. In his direct appeal, Lusane challenged his conviction on the basis that one of his prior convictions was constitutionally infirm. However, he never alleged that the State failed to present sufficient evidence of the fact of any of his convictions or that any of his convictions were invalid based on the failure of the journal entries from his past cases to comply with Ohio Crim R. 32(C). (*See* Doc. No. 7-1 at 280-86.) Moreover, his claim appeared on the face of the record and could have been raised on direct appeal. Lusane's claim is based on the fact that the

journal entries for two of his past convictions presented by the State were invalid and insufficient to prove the fact of his past convictions.  As such, no evidence from outside the record was necessary to present his claim.  Indeed, in his Objections, Lusane states that the journal entries were "facially void."  (Doc. No. 66 at 5.)  Although Lusane later obtained rulings from the Ohio Court of Appeals that the judgment entries from his 2000 and 2005 Ravenna OVI convictions did not comply with Ohio Crim. R. 32(C), this was not necessary for him to raise the issue on direct appeal.  Thus, by failing to raise his claim on direct appeal or at any point in his state court proceedings, Lusane has procedurally defaulted this claim.

A petitioner may avoid procedural default "by showing that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case."  *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000). To establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him."  *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007).  "Prejudice, for purposes of procedural default analysis, requires a showing that the default of the claim not merely created a possibility of prejudice to the defendant, but that it worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions."  *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002).

Lusane has not, and cannot, demonstrate cause for his procedural default.  As discussed above, there is no reason that Lusane could not have raised his sufficiency of the evidence claim at any point in time earlier in his state court proceedings.  The Court thus need not assess whether prejudice resulted from his default.

23

A petitioner's procedural default also may be excused where a petitioner is actually innocent in order to prevent a "fundamental miscarriage of justice." *Coleman v. Johnson*, 501 U.S. 722, 749-50 (1991).  In order to establish actual innocence, a habeas petitioner must show "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see also Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012); *Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007).  A petitioner must show that, in light of the new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *See Schlup*, 513 U.S. at 327.  "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id.* at 316.

Lusane appears to argue that this standard is met by asserting that it is a miscarriage of justice for his conviction to be sustained based on the allegedly insufficient journal entries.  (Doc. No. 66 at 4.)  However, Lusane has not identified any new evidence that was not presented at trial establishing his innocence.  Indeed, the journal entries themselves appear to have been presented before the state trial court, and he could have asserted at that time or on appeal that they were insufficient to support his conviction.  As such, Lusane cannot establish a miscarriage of justice to excuse his procedural default.  *See Harris v. Morgan*, No. 1:10CV02351, 2012 WL 2505838, at *5 (N.D. Ohio June 28, 2012).

Moreover, even if the recent decisions by the Ohio Court of Appeals requiring the correction of the judgment entries in two of his past OVI cases to conform to Ohio Crim. R. 32(C) are considered "new evidence," they do not demonstrate that Lusane is actually innocent.  In *State v. Gwen*, the Ohio Supreme Court held that "[w]hen the state chooses to prove a prior offense not through a guilty plea, but via a conviction, and the defendant does not stipulate to the fact of the conviction, the judgment entry of conviction offered must contain the four elements described in Crim.R. 32(C)."  134 Ohio St.3d 284, 289 (2012).  Thus, Lusane may have a substantial argument that the journal entries offered by the State to prove his 2000 and 2005 Ravenna OVI convictions were insufficient evidence of his past convictions because they did not comply with Ohio Crim R. 32(C).

However, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623.  And Lusane has not demonstrated that either of the challenged past convictions are void, or as Lusane argues, that they "were not legally available for any purpose." (Doc. No. 66 at 4.)  To the contrary, the Ohio Court of Appeals decisions relied on by Lusane merely required the municipal court in each case to correct a technical deficiency in their respective judgment entries because the fact of conviction and sentence were not set forth in the same entry in compliance with Crim. R. 32(C).  *See Lusane*, 2020 WL 1000054, at *1; Lusane, 2019 WL 4166777, at *1. Accordingly, Lusane has not shown the past convictions were void so that he was actually innocent of the repeat offender specification.

Moreover, Lusane was convicted under Ohio Rev. Code § 4511.19(G)(1)(d), which provides that "an offender who, within twenty years of the offense, previously has been *convicted of or pleaded guilty to* five or more violations of that nature is guilty of a felony of the fourth degree."  Ohio Rev. Code § 4511.19(G)(1)(d) (emphasis added); *see also* Ohio Rev. Code § 2941.1413.  Ohio courts have

25

held that such language permits the State to present evidence of previous guilty pleas to establish prior offenses. *See Gwen*, 134 Ohio St.3d at 287 ("Thus, the state was required to prove that Gwen had 'pleaded guilty to or been convicted of two or more offenses of domestic violence.' By using the phrase 'pleaded guilty to' as an alternative to 'convicted of' in R.C. 2919.25(D)(4), the General Assembly has allowed the state to offer evidence of a defendant's guilty plea as proof of a prior offense of domestic violence."); *State v. Nesser*, No. 2013 CA 21, 2014 WL 1887694, at *9 (Ohio Ct. App. 2d Dist. May 9, 2014).

Here, both Ohio Court of Appeals decisions that Lusane cites as new evidence noted that Lusane plead guilty to the OVI charge in the municipal court. *Lusane*, 2020 WL 1000054, at *1 ("On May 12, 2000, he signed a written plea of guilty to OVI. The bottom of this document, signed by the judge, stated that the court accepted Lusane's guilty plea."); *Lusane*, 2019 WL 4166777, at *1 ("The trial court noted on the case file jacket that appellant plead guilty to operating a vehicle while intoxicated."). As such, even though there was a technical deficiency in the judgment entries in two of Lusane's past convictions, he plead guilty in both cases, which also is sufficient to establish that the repeat offender specification applied to Lusane such that he cannot show he is actually innocent. As a result, Lusane has failed to demonstrate actual innocence to excuse his procedural default.

Accordingly, the Court finds Ground One of Lusane's Petition is meritless. To the extent that Lusane attempts to raise a new sufficiency of the evidence claim in his Objections, that claim is denied as not properly raised before the Magistrate Judge and, alternatively, as procedurally defaulted.

### b.  Ground Two

In Ground Two of his Petition, Lusane asserts that he was denied the effective assistance of counsel for several reasons, including the fact that his trial counsel failed to investigate the constitutional infirmity of his 2005 Ravenna OVI conviction, failed to subpoena the court reporter from that case to support Lusane's argument, and withheld exculpatory evidence related to the recording of the call that resulted in Lusane's arrest.  (Doc. No. 1 at 6; Doc. No. 34 at 13-14.)  The Magistrate Judge found that Ground Two was procedurally defaulted because Lusane did not raise his claims in Ground Two on direct appeal, and those claims were dismissed under the doctrine of *res judicata* when he later raised them in his post-conviction petition.  (Doc. No. 60 at 28-33.)  The Magistrate Judge also concluded that Ground Two lacked merit.  (*Id.* at 33-35.)

In his Objections, Lusane reiterates several of the same allegations presented to the Magistrate Judge as to why his counsel was ineffective, but does not point to any errors in the Magistrate Judge's finding that Ground Two is procedurally defaulted.  (*See* Doc. No. 66 at 4-6.)  It is somewhat unclear, but Lusane also appears to raise a new argument regarding his counsel's failure to "object to the journal entries that were facially void where those entries were used to prove essential elements of the offense," again relying on the Ohio Court of Appeals decisions regarding his 2000 and 2005 Ravenna OVI convictions.  (*Id.* at 4-5.)

The Court agrees with the Magistrate Judge that Ground Two of Lusane's Petition is barred as procedurally defaulted.  In addition, to the extent that Lusane raises a new claim related to his counsel's failure to object to the journal entries from his 2000 and 2005 Ravenna OVI convictions, that claim was not properly raised before the Magistrate Judge and, alternatively, is procedurally defaulted itself.

Ohio courts regularly apply the doctrine of *res judicata*, which has been found to be an adequate and independent state-law ground to foreclose habeas relief in federal court. *See, e.g., Landrum v. Mitchell*, 625 F.3d 905, 934 (6th Cir. 2010) ("The Ohio Court of Appeals's reliance on *res judicata* was an adequate and independent state ground to foreclose *habeas* relief in federal court."); *Fautenberry v. Mitchell*, 515 F.3d 614, 633 (6th Cir. 2008); *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004); *Martin v. Mitchell*, 280 F.3d 594, 604 (6th Cir. 2002).

Here, Lusane did not raise his ineffective assistance of counsel claim on direct appeal. When he later raised it in a motion for post-conviction relief, it was dismissed under the doctrine of *res judicata* because he could have, but did not, raise it on direct appeal. (*See* Doc. No. 7-1 at 564-65, 632-35.) Thus, Lusane's Ground Two claim is procedurally defaulted unless he can show cause and prejudice to excuse his failure to exhaust it in state court or that he was actually innocent. Lusane has not offered any argument to excuse his procedural default in his Objections, and the Magistrate Judge correctly concluded that Lusane could not establish cause, prejudice, or that he was actually innocent. Accordingly, Ground Two, as presented in the Petition, is barred by procedural default.

To the extent that Lusane has offered a new theory in support of his ineffective assistance of counsel claim in his Objections based on his counsel's failure to object to the journal entries offered in support of his 2000 and 2005 Ravenna OVI convictions, that claim was not sufficiently presented to the Magistrate Judge and may be denied on that basis alone. *See Cody*, 2020 WL 1060031, at *8.

Alternatively, for the same reasons discussed above with respect to Lusane's attempt to raise new arguments under Ground One, Lusane's new theory in support of his ineffective assistance of counsel claim is barred by procedural default. Specifically, the claim is procedurally defaulted because it was not presented in a timely manner in state court. And Lusane cannot excuse the

procedural default, as Lusane cannot demonstrate cause for not raising his theory in state court and he has not presented new evidence showing that he is actually innocent.

Therefore, the Court overrules Lusane's objections with respect to Ground Two of his Petition.

### c.  Grounds Three Through Six

With respect to Grounds Three through Six of Lusane's Petition, the Magistrate Judge found that each claim was either procedurally defaulted, noncognizable, and/or lacking in merit.  (Doc. No. 60 at 35-47.)  As noted above, in his Objections, Lusane focuses solely on Grounds One and Two and does not specifically object to any of the Magistrate Judge's findings with respect to Grounds Three through Six.  (*See* Doc. No. 66.)  As such, the Court need only satisfy itself that there was no clear error with respect to any of these grounds in order to accept the R&R.  Fed. R. 72(b)(3), Advisory Committee Notes; *see also Thomas*, 474 U.S. at 150.  The Court has reviewed the Magistrate Judge's findings with respect to Grounds Three through Six and finds no clear error. Accordingly, the Court adopts the Magistrate Judge's conclusions and finds that Grounds Three through Six are either procedurally defaulted, noncognizable, and/or lacking in merit, as set forth in the R&R.

## IV.  Conclusion

For the reasons set forth above, Lusane's Objections (Doc. No. 66) are OVERRULED. Accordingly, the Magistrate Judge's Report & Recommendation (Doc. No. 60) is ADOPTED as set forth herein, and the Petition (Doc. No. 1) is DENIED.  Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that

there is no basis upon which to issue a certificate of appealability.  28 U.S.C. § 2253(c); Fed. R. App.

P. 22(b).

**IT IS SO ORDERED.**


_s/Pamela A. Barker_

PAMELA A. BARKER

Date:  January 19, 2021                              U. S. DISTRICT JUDGE

30